G. J. THOMASON ET AL. v. M. F. HAM ET AL.

No. 3868. Decided June 30, 1923.

(254 S. W., 316.)

**1.—Grant of Minerals—Abandonment.**

Estates in minerals and mining rights vesting under grants for the sole purpose of mineral development, made in view of promised royalties, are limited to the time the grantees and their assigns were pursuing the essential purposes and objects of the grants, and abandonment of such contracts and of the mineral operations thereby required necessarily deprived the grantees and their assigns of any further claim to minerals on land. (Pp. 246, 247).

**2.—Same—Reservation of Right to Abandon.**

The reservation of a right in the grantee of mineral rights to be relieved of his obligations under the contract in regard to mining and production by surrendering his rights to continue same, strengthens the construction of his contract as one which can be abandoned by him by discontinuing mining and production after minerals have been discovered, though his rights, on such discovery, were, by the terms of the contract, to continue for twenty years. (P. 246).

**3.—Same—Cases Followed.**

Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160; Texas Co. v. Davis, 113 Texas, 321; Munsey v. Marnet Oil & Gas Co., 113 Texas, 212; Robinson v. Jacobs, 113 Texas, 231; approved and followed. (P. 246).

Error to the Court of Civil Appeals for the Eighth District, in an appeal from Stephens County.

Ham and wife sued J. G. Thomason to recover land and cancel contracts for mineral rights therein. Y. L. and G. W. Thomason intervened as grantees of part of the rights of defendant. On a find-

ing that defendant and interveners had lost their rights by abandonment, judgment went for plaintiffs, and defendant and interveners appealed. The judgment was affirmed by the Court of Civil Appeals (242 S. W., 525), and appellants obtained writ of error from the Supreme Court.

*H. G. McConnell, E. D. McKenzie,* and *Hawkins & Hawkins,* for plaintiffs in error.

The general rule of law generally prevailing throughout the United States is that where representations as inducements for entering into a written contract relate solely to the future, and are merely promissory in nature, they will not support rescission or cancellation of such contract. Many courts treat evidence of such promissory representations as attempts to vary by parol the terms of the written contract. An exception which the courts of Texas have engrafted upon said general rule is that where such purely promissory representations have been made with the design of cheating and defrauding the other party to the written contract, fraudulently, without any existing intention of the promissor to carry them out, and merely as a false pretense to induce such other party to execute such written contract, and such representations and promises actually had that effect, and the other party to the written contract has demanded performance of the promissor, and he has failed and refused to carry out or perform each and all of said promises, and damage has resulted to such other party, such facts, taken all together, will support rescission and cancellation of such written contract. Railway v. Titterington, 84 Texas, 218; Cearly v. May, 106 Texas, 442; Bigham v. Bigham, 57 Texas, 238; Burchill v. Hermsmyer, 212 S. W., 770; Lott v. Harper, 204 S. W., 452; Lawrence v. Mahoney (Ark.), 225 S. W., 340.

And in an action like the present one, involving a joint agreement of numerous persons contributing to an extensive joint acreage agreement, in which each contributor is interested proportionately, each and all of the above mentioned elements or grounds of fraud must be both alleged and proved with a reasonable degree of certainty as to each interested party. Failure to plead and prove any one of these elements of fraud is fatal to the attempt to rescind or cancel such written contract. Home v. National Bank, 122 S. W., 431-3; Hurst v. Knight, 164 S. W., 1075; Wortman v. Young, 221 S. W., 662; Railway v. Merc. Co., 216 S. W., 627; McCaskey v. McCall, 226 S. W., 432; Kirby Lbr. Co. v. Lewis, 222 S. W., 332; Oil Co. v. Boykin, 206 S. W., 216; 20 Cyc., 13.

The stipulated work of prospecting for minerals having been seasonably begun and diligently prosecuted and successfully carried out by appellants, at large expense to them, and with full knowledge,

consent and approval of appellees, resulting in the discovery of a good grade of coal in large commercial and paying quantities, the legal title to all minerals in the land covered by said conveyance from appellees to G. J. Thomason thereupon became vested in appellants for a period of twenty years and as much longer as any of the minerals can be found in or under the land, in paying quantities, in perpetuity. Key v. Big Sandy Oil Co., 212 S. W., 300; Tickner v. Luse, 220 S. W., 578.

The language of plaintiffs' conveyance to defendant is apt in a deed passing a present interest in land, an executed contract, but inapt in a lease, carrying a mere option. The real nature of the instrument is shown by its phraseology. Texas Co. v. Daugherty, 107 Texas, 226, 176 S. W., 717; McEntire v. Thomason, 210 S. W., 563; Thomason v. Ham, 210 S. W., 561; Davis v. Texas Co., 232 S. W., 549; Tickner v. Luse, 220 S. W., 578; McKay v. Lucas, 220 S. W., 172. Contrast: Grubb v. McAfee, 109 Texas, 527, 212 S. W., 464; Pipe Line Co. v. Teel, 95 Texas, 586, 68 S. W., 979. See also: McCallister v. Texas Co., 223 S. W., 859.

Even though it should be assumed or held that by the terms of the conveyance from appellees the appellants, under ordinary circumstances, would stand charged, during the stipulated twenty years' period, with the implied obligation and duty of producing and marketing coal, nevertheless appellants now stand relieved of that implied obligation and duty by reason of the uncontroverted fact that, because of the lack of transportation facilities, the coal under the land, although existing in large commercial and, ordinarily, paying quantities, cannot be produced and marketed at a profit. Benavides v. Hunt, 15 S. W., 400-1; Coal Co. v. Parks, 143 S. W., 22; Trust Co. v. Coal Co., 193 Fed., 124-6; Poe v. Ulrey, 84 N. E., 46; Brewster v. Zinc Co., 140 Fed., 814.

The rights and interests acquired by appellant, G. J. Thomason, under the conveyance from appellees, are not the subject of abandonment. Fisher v. Oil Co., 178 S. W., 905; Key v. Big Sandy Oil Co., 212 S. W., 300; Tickner v. Luse, 220 S. W., 578; Scott v. Laws, 215 S. W., 81; McGraw v. Kennedy, 28 L. R. A. (N. S.), 959.

In no event could there be an abandonment by appellants, or any of them, of their respective rights or interests by virtue of or under the conveyance from appellees to G. J. Thomason, in the absence of proof of (a) an intention upon the part of such appellant to abandon the same and (c) a demand or request by appellees to appellants, or any of them, to proceed with producing and marketing some mineral from the land. Hall v. McClesky, 228 S. W., 1004; Hall v. Roberts, 228 S. W., 1008; Pierce v. Coal Co., 225 S. W., 193; Corsicana Petroleum Co. v. Owens, 222 S. W., 154; Sugg v. Williams, 229

S. W., 72; Benavides v. Hunt, 15 S. W., 400; Gas Co. v. Richardson (Ky.), 99 S. W., 668; Gas Co. v. Gilliam, 207 S. W., 698.

The conveyance from appellees to G. J. Thomason embodies no express provision for "forfeiture" in any event; but, on the contrary, clearly indicates and shows that no forfeiture of the rights of said grantee, or his assigns, conferred by or growing out of the contract, was contemplated by the parties to that conveyance. Jokusch v. Lyon, 100 Texas, 594; Pearson v. Cox, 71 Texas, 246; Mills v. Alexander, 21 Texas, 154; Davis v. Burkholder, 218 S. W., 1101; Michies' Digest, "Rescission," p. 216 (b) and p. 217 (c); McEntire v. Thomason, 210 S. W., 563; Cecil v. Henry, 93 S. W., 216; Varnes v. Dean, 228 S. W., 1017.

*J. R. Stubblefield,* for defendants in error.

The written instrument from Ham and wife to G. J. Thomason was no more than a mineral lease, and did not convey a fee simple title to the minerals in place. Grubb v. McAfee, 109 Texas, 527, 212 S. W., 464; National Oil & Pipe Line Co. v. Teel, 95 Texas, 586, 68 S. W., 979; Texas Company v. Daugherty, 107 Texas, 226, 176 S. W., 722, (re-affirming Teel case); Marnett Oil & Gas Co. v. Munsey, 232 S. W., 867; Munsey v. Marnett Oil & Gas Co., 199 S. W., 689; Hall v. McCleskey, 228 S. W., 1005; Texas Company v. Curry, 229 S. W., 645; Clutter v. Wisconsin-Texas Oil Co., 233 S. W., 324; Miller v. Mauney (Ark.), 234 S. W., 498; United Mining Co. v. Morton (Ky.), 192 S. W., 83; Barnsdall v. Bradford Gas Co., 26 L. R. A. (N. S.), 619; Steelsmith v. Gartlin (W. Va.), 44 L. R. A., 107; Gadbury v. Ohio, etc. Gas Co., 62 L. R. A., 895; 18 R. C. L., Sec. 114, p. 1212; Paine v. Griffiths, 86 Fed., 452.

In the light of the authorities mentioned, unquestionably the real consideration for the contract under consideration was the expectation of royalties, and it certainly never was contemplated by the grantors that they would be divested of all their title in fee simple to the minerals in place, and that the grantee could hold the same for a period of twenty years, and that without any development whatever. In construing this contract the rule announced by Judge Cobbs in the case of Clutter v. Wisconsin-Texas Oil C., 233 S. W., 324, should certainly be applied.

Under the terms of the contract in controversy there was an implied obligation that Thomason would reasonably and fairly develop the minerals even after the same had been discovered. Munsey v. Marnett Oil & Gas Co., 199 S. W., 689; Marnett Oil & Gas Co. v. Munsey, 232 S. W., 867.

The question of abandonment is one of fact to be determined by the jury, and if the testimony is sufficient to reasonably and fairly

present the issue, the finding of the jury is conclusive upon this issue. Hall v. McCleskey, 228 S. W., 1005.

If the defendants abandoned the contract in controversy, the plaintiffs were not required under the law to give them notice of rescission. Black on Rescission and Cancellation, 1916 Ed., Vol. 2, Secs. 462 and 571.

It is respectfully submitted, that the verdict of the jury is abundantly supported by the testimony in this case; that every obligation which the appellants owed to the appellees has been flagrantly violated; that the appellants perpetrated a most palpable fraud on the appellees and others, and are now seeking to secure a title in fee simple to the valuable mineral rights of the plaintiffs, and under circumstances where the plaintiffs have never received one penny for the same, and we respectfully urge that this case should be affirmed.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Defendants in error brought an action against plaintiff in error G. J. Thomason to try the title to 1377 acres of land in Stephens County and to secure the cancellation of two conveyances thereto, executed by defendants in error to plaintiff in error G. J. Thomason. One of the grounds on which the suit was brought was that whatever rights were acquired under said conveyances had been lost by abandonment. Y. L. Thomason and G. W. Thomason intervened, having acquired two thirds of the interest of G. J. Thomason. The jury found for defendants in error on the issue of abandonment and the judgment was affirmed by the El Paso Court of Civil Appeals. 242 S. W., 525.

We have carefully examined the pleadings, which are challenged, and think defendants in error alleged facts entitling them to a decree cancelling the conveyances, if the estates conveyed were such as to be lost by abandonment.

Since our disposition of the case is governed by our construction of these conveyances, we copy them as follows:

"Know all men by these presents: That we, M. F. Ham and wife, Lizziebeth Ham, of Stephens County, Texas, the party of the first part, in consideration of the sum of $1.00 paid by G. J. Thomason, parties of the second part the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned:

"HAVE GRANTED, BARGAINED, SOLD AND CONVEYED and do by these presents, Grant, Sell and convey unto the parties of the second part their heirs and assigns, all of the coal, oil and gas and other minerals in and under the following described land, together with the right of ingress and egress at all times for the purpose of drilling, mining and operating for minerals, and to conduct all operations and to lay all pipes and railway necessary for the pro-

duction, mining and the transportation of the coal, oil, gas, water or other minerals, and shall have the right to remove all machinery, fixtures and improvements placed thereon at any time, reserving, however, to the parties of the first part their proportionate part of cash dividends which shall be determined by the number of shares of stock owned by them, and such payment made quarterly without demand, said land being described as follows:

"1.    557 acres patented by the State of Texas to Sarah Blythe, Pat. 162, Vol. 21, dated July 3, 1875, same being situated in Stephens County, Texas, and more particularly described by Deed Records of said County.

"2.    516 acres—all of Section No. Nine (9) in Blk. No. Seven (7) S. P. R. R. Co. lands being situated in Stephens County, Texas, same being more particularly described by Deed Records of said County.

"(Containing 1073 acres, more or less).

"TO HAVE AND TO HOLD THE ABOVE DESCRIBED PREMISES unto the said parties of the second part, their heirs and assigns, upon the following conditions:   In case operations for either the drilling of a well for coal, oil, gas, mining or other minerals is not commenced and prosecuted with due diligence within 15 months from this date on the above described premises, or on one or more of their leases owned by parties of the second part, then the second party agrees to pay to the first party the sum of ten per cent per annum on the par value of each dollar of stock owned by first party; it being agreed that the first party is to take shares of the capital stock of Diamond Coal, Oil and Gas Company at par value as payment of the above named 10 per cent until such well or shaft is commenced; and it is agreed that the completion of such well or opening up one mine, gas or oil well, shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease. Such payments will be made direct to the holder of said stock.

"In case the parties of the second part should bore and discover either coal, oil, gas or other minerals, then and in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty years from the time of the discovery of said products, and as much longer as coal, oil, gas, water or other minerals can be produced in paying quantities thereon.

"Whenever sales are being made of the product on the land above described, such sales shall be added to the sale of the product from all leases owned by the parties of the second part, and a settlement thereof shall be made at the end of each quarter.

"And it is further agreed that the second parties, their heirs and assigns may at any time hereafter surrender up this grant and be relieved from any part of the contract heretofore entered into that may at that time remain unfulfilled, then and from thereafter this

grant shall be null and void, and no longer binding on either party. It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators and assigns.

"Witness our hands this 18th day of August, A. D., 1909."

"Know all men by these presents: That M. F. Ham and wife, Lizziebeth Ham, of Stephens County, Texas, party of the first part, in consideration of the sum of $1.00 paid by G. J. Thomason, parties of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned;

"HAVE GRANTED, BARGAINED, SOLD AND CONVEYED, and by these presents Grant, Bargain, Sell and convey unto the parties of the second part, their heirs and assigns, all of the coal, oil and gas and other minerals in and under the following described land, together with the right of ingress and egress at all times for the purposes of drilling, mining and operating for minerals, and to conduct all operations, and to lay all pipes and railway necessary for the production, mining and the transportation of the coal, oil, gas, water or other minerals, and shall have the right to remove all machinery, fixtures, and improvements placed thereon at any time, reserving however, to the parties of the first part their part of the cash dividends 1/10 and such payment made quarterly without demand. Said land being described as follows, to-wit:

"304 acres out of Abstract No. 2946, 866 sq. vrs. granted to Sarah Blythe by Letters Patent No. 161, Vol. 21, dated July 3rd, 1875, same being situated in Stephens County, Texas, and particularly described by deed records of said County, containing (304) Three Hundred and Four acres, more or less.

"TO HAVE AND TO HOLD the above described premises unto the said parties of the second part, their heirs and assigns upon the following conditions: In case operations for either the drilling of a well for coal, oil, gas, mining or other minerals is not commenced and prosecuted with due diligence within 15 months from this date on the above described premises, this contract is null and void.

"In case the parties of the second part should bore and discover either coal, oil, gas or other minerals, then and in that event this grant, encumbrance or conveyance shall be in full force and effect for twenty years from the time of the discovery of said product, and as much longer as coal, oil, gas, water or other minerals can be produced in paying quantities thereon.

"Whenever sales are being made of the product on the land above described, such sales shall be added to the sales of the products, from all leases owned by the parties of the second part, and a settlement thereof shall be made at the end of each quarter.

"It is further agreed that the second parties, their heirs, and assigns, may at any time hereafter surrender up this grant, and be relieved from any part of the contract heretofore entered into that may at that time remain unfulfilled, then and from thereafter this grant shall be null and void, and no longer binding on either party.

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators and assigns.

"Witness our hands this 18th day of August, A. D., 1909."

The grants are of minerals in place but for the single purpose "of drilling, mining and operating for minerals." Each grant, for the purposes stated, is to endure for twenty years from the discovery of minerals and as much longer as the same can be produced in paying quantities. Moreover, each grant appears to expressly authorize the exercise of the right to abandon the enterprise by providing that "the second parties, their heirs and assigns may at any time hereafter surrender up this grant and be relieved from any part of the contract heretofore entered into that may at that time remain unfulfilled, *then and from thereafter this grant shall be null and void and no longer binding on either party.* Such grants plainly cannot endure after their voluntary relinquishment by abandonment. Regardless of this express surrender clause, we held today that estates vesting under grants for the sole purpose of mineral development, made in view of promised royalties, were limited to the time the grantees and their assigns were pursuing the essential purposes and objects of the grant, and that abandonment of such contracts and of the mineral operations thereby required necessarily deprived the grantees therein and their assigns of any further claim to minerals or land. The principle is applicable and controlling in preventing Thomason or his assigns from having any title in or to the minerals or land in controversy, after abandonment of the mining operations. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160; The Texas Company v. Davis, 113 Texas, 321; Munsey v. Marnet Oil & Gas Co., 113 Texas, 212; Robinson v. Jacobs, 113 Texas, 231.

The following excerpt from an opinion of the New Jersey Court of Chancery seems pertinent to the instruments executed by defendant in error, especially in view of their voluntary surrender clause, towit:

"If we pay any attention to the general design of the instrument, the nature of the property which was the subject matter of the arrangement, the situation and relation of the parties, and the character of the privilege granted, it is impossible to believe that Williams intended to give to Rude an exclusive and irrevocable privilege to take ore from his lands, which Rude might exercise or not, just as he pleased, and if he chose not to exercise it, that his arbitrary choice in the matter should have the effect of preventing Williams,

forever, from developing the mineral resources of his land. Williams' object was undoubtedly just the reverse of this. His purpose was to have his land explored and their mineral resources developed, not to grant a privilege which could be used to clog their development. That Rude understood that this was Williams' purpose, I think there can be no doubt. The discovery and mining of ore was manifestly the design of both parties, and their contract relations and duties were to cease when that purpose was abandoned." East Jersey Iron Co. v. Wright, 32 N. J. Eq., 256, 257.

Finding no error in the judgment of the Court of Civil Appeals, it is affirmed.

*Affirmed.*