## SIGLER OIL CO. v. W. T. WAGGONER ESTATE. (No. 2532.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 14, 1925. Rehearing Denied Nov. 11, 1925.)

1. Mines and minerals ☞58—Cash rent of $1.18 per acre substantial consideration for 85,000-acre oil lease in wildcat territory.

Annual cash rent of $1.18 per acre held substantial consideration for 85,000-acre oil lease in wildcat territory.

2. Mines and minerals ☞77—Abandonment of oil lease is question of intention presenting issue of fact for jury.

Abandonment of oil lease is question of intention, and presents an issue of fact for jury.

3. Mines and minerals ☞77—Intention and actual relinquishment must be shown to constitute "abandonment of oil lease."

General rule is that, to constitute abandonment of oil lease, there must be intention to abandon and actual relinquishment of enterprise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon —Abandonment.]

4. Mines and minerals ☞78(2)—If covenant for reasonable development after producing well was obtained may be implied, breach of it would not be grounds for forfeiture of oil lease.

If covenant for reasonable development of property covered by oil lease after first producing well was obtained may be implied at all where there has been no abandonment, still a breach of it would not be grounds for forfeiture, and lessor's remedy is action for damages, and in alternative for specific performance.

5. Mines and minerals ☞78(1)—May hold entire oil lease for full term by drilling to production wells as provided in terms of lease.

Where terms of oil lease provided that each producing well should hold 2,000 acres in a square in which well was center, such stipulation means that lessee might hold entire lease for full term of contract by drilling to production one well on each 2,000 acres.

6. Mines and minerals ☞78(1) — Further development after discovery of oil must be determined by surrounding circumstances when contract is silent in respect thereto.

When contract is silent as to extent of further development after discovery of oil in initial well, duty of further development and its extent must be determined in light of surrounding circumstances.

7. Mines and minerals ☞73—Oil and gas contracts not construed strongly against lessee in wildcat territory.

Oil and gas contracts are not construed so strongly against lessee in wildcat territory.

8. Contracts ☞168—Additions ought not be made to contracts by implication.

Additions ought not to be made to contracts by implication beyond that which is necessary.

9. Mines and minerals ☞78(2)—Judgment requiring drilling of oil wells held erroneous in absence of evidence showing such to be equitable.

In action for cancellation or specific performance of oil lease covering 3,000 acres, trial court's finding requiring drilling of one well upon each 40 acres until as many as eight wells were drilled held erroneous, since there was no evidence showing such requirement would be equitable, and no issue was submitted to jury as to what would be reasonable development.

Appeal from District Court, Wilbarger County; J. V. Leake, Judge.

Action by the W. T. Waggoner Estate against the Sigler Oil Company. From the judgment, both parties appeal. Reversed and remanded.

Bullington, Boone & Humphrey and John B. King, all of Wichita Falls, for appellant.

Berry, Stokes & Killough, of Vernon, and F. B. Walker and Thompson, Barwise & Wharton, all of Fort Worth (J. H. Barwise, Jr., of Fort Worth, of counsel), for appellee.

HALL, C. J. On the 27th day of January, 1919, W. T. Waggoner and others, owning approximately 85,000 acres of land in Wilbarger and Baylor counties, executed an oil and gas lease to W. G. Burton, conveying the mineral rights in said land. Thereafter by mesne conveyances the Sigler Oil Company acquired by assignment 3,000 acres of the land. This suit was filed by the W. T. Waggoner estate, successor in title to the original grantors, against the Sigler Oil Company, to cancel the assignment in virtue of which it

acquired the 3,000 acres, and in the alternative for specific performance of the contract. The trial court refused to cancel the lease, but decreed specific performance, as hereinafter set out. Both parties have appealed, but the Sigler Oil Company will be hereinafter designated as appellant, and the Waggoner estate as appellee.

The material stipulations in the original lease to Burton are as follows:

"That the said lessor, for and in consideration of one hundred thousand dollars ($100,000) cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept, and performed, have granted, demised, leased, and let, and by these presents do grant, demise, lease, and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines and of building tanks, power stations, and structures thereon to produce, save, and take care of said products, all that certain tract of land situated in the counties of Wilbarger and Baylor, state of Texas, described as follows, to wit, * * *

"Annual rental provided for herein, to wit, one hundred thousand dollars ($100,000) per year payable annually in advance on the 27th day of each January during the life of said lease * * * provided each producing well shall hold 2,000 acres in a square, said well to be the center, and said 2,000 acres shall be released as to further annual rental.

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas or either of them is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees: (1) To deliver to the credit of lessor, free of cost, in the pipe lines to which they may connect their wells the equal one-eighth part of all oil produced and saved from the leased premises. If no well be commenced on said land on or before the 1st day of June, 1919, this lease shall terminate as to both parties, allowing reasonable time for unavoidable delays.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part thereof of the rentals due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof, shall make due payment of said rental. * * *"

In its second amended original petition upon which the case was tried, the appellee alleged in substance that the 85,000 acres of land were leased for the sole and only purpose of mining and operating for oil and gas, with the expectation, object, and agreement of having said land tested, explored, and developed for that purpose; that it was contemplated and in fact provided for by the terms of the lease, that the entire tract of land should be subject to division and subdivision, to the end that the entire tract would be explored and developed, exploration and development being the essential purpose and object of the lease; that the contract made with Burton vested in him and his assigns a determinable fee in and to the oil and gas under said land for a period of five years from the date of the lease, and so long thereafter as oil or gas might be produced and saved from the premises, subject, however, to termination and reversion to the grantors, should there be a failure to carry out the essential purposes of the lease imposed upon Burton and his assigns by its terms. It is further alleged that at the time the lease was executed it was the law at all times that said lessee and his assigns would exercise reasonable diligence in developing the lands for minerals, and that such development was a primary consideration for the execution of the lease and was its essential object; that the Sigler Oil Company acquired the 3,000 acres in question subject to all the terms and conditions of the original lease to Burton, and that it had wrongfully, willfully, and purposely refused to exercise reasonable diligence in developing the 3,000 acres, and by reason of such failure it had forfeited its rights and interest in said 3,000 acres, and the title thereto had reverted to the appellee.

The appellant answered by general demurrer, special exceptions, a general denial, and specially answered that it had fully complied with all the terms and conditions of the lease, in that it had drilled on said 3,000 acres four wells, two of which were producing oil in paying quantities, and from which appellee had received one-eighth royalty; that in drilling these wells appellant had expended in excess of $150,000, and that the total production of the lease up to the date of the filing of this suit had been insufficient to pay the cost of development and operating expenses. It is further alleged that the lease is located in wildcat territory; that other wells have been drilled in the vicinity of the two producing wells, which were valueless; wherefore, it would be unjust and inequitable to forfeit appellant's title for failure to drill additional wells by reason of the uncertainty of obtaining producing wells in that vicinity. Appellant further specially pleaded the provisions of the lease to the effect that a producing well should hold 2,000 acres in a square, said well to be in the center of said 2,000 acres, and alleged its compliance with this express provision of the lease. Upon the trial all demurrers and exceptions were overruled.

The issues were submitted to a jury and

resulted in the following findings: (1) That the appellant did not use reasonable diligence in developing the land described in the lease dated January 27, 1919; (2) that the appellant breached its duty in failing to carry out the essential purposes of the lease in question; (3) that the appellant did not abandon the duty of carrying out the essential purpose of the lease in question. Both parties moved the court for judgment. Judgment was entered denying appellee's prayer for a cancellation of the lease, but specific performance was decreed in appellee's favor, requiring appellant to test the land for oil and gas. By the decree appellant's claim to all of the land except 1,698 acres was canceled. 10 acres upon which producing wells were located were decreed to appellant. The judgment requires the appellant to subdivide the remaining 1,688 acres into blocks of 40 acres each, and further requires appellant to drill to completion at least one well on the undeveloped portion of this lease within six months periods until as many as eight wells are drilled on said land, and provides that if the appellant shall refuse or fail to comply with such provision of the decree, then that it be held to have abandoned all its right, title, and interest to the land except as to the 10-acre tract segregated by the judgment upon which the producing wells were situated, and any 40-acre subdivision upon which there should be a producing well.

The record shows that on March 20, 1919, after the execution of the original lease to Burton, he conveyed by assignment the 3,000 acres in question to W. C. Stripling and A. G. Carter. They in turn conveyed the same premises to Sigler Oil Company on December 26, 1919. It further appears that the $100,000 was paid in cash at the time of the execution of the original lease to Burton. Soon after appellant acquired the lease a well was commenced thereon, and, when completed, produced oil in paying quantities. The stipulation in the record with reference to this is as follows:

"Well No. 1 was drilled by the Prescott-Peoria Oil Company, and was completed on March 19, 1920. Well No. 2 was commenced in April, 1920, and completed about September 20, 1920. No. 3 was commenced on April 7, 1922, and completed June 2, 1922; that is, the casing was set. No. 4, the well which was drilled by the Triangle Company, was commenced about December 17, 1920, and completed in the early part of 1921."

As shown by the statement of facts, two additional wells were drilled on the 3,000 acres, but outside of the boundaries of the 1,698 acres immediately surrounding the two producing wells. Appellee had received, in addition to royalties, approximately $300,000 in cash as rentals from the lease. At the time the suit was instituted practically all of the remainder of the 85,000 acres had been reassigned or surrendered to appellee.

[1] At the time this contract was made the territory included in it was unproductive. The nearest producing well to well No. 1 was about 18 miles away. There was no pipe line in that part of the territory, and the oil produced from the two wells was hauled about 20 miles, and sold to the Waggoner Refinery at Electra. The cash rent paid annually for the lease was approximately $1.18 per acre, which was a substantial consideration for a lease of 85,000 acres in wildcat territory. Richmond v. Hog Creek Oil Co. (Tex. Civ. App.) 229 S. W. 563; McKay v. Tally (Tex. Civ. App.) 220 S. W. 167; Pierce Fordyce Oil Association v. Woodrum (Tex. Civ. App.) 188 S. W. 245.

[2, 3] The record shows that the appellant had been marketing oil from the two producing wells and paying royalties to appellee ever since the wells were drilled to production, except temporarily when fire destroyed the derricks on two occasions. The finding of the jury that appellant had not abandoned "its duty of carrying out the essential purposes of the lease" is supported by the evidence. Abandonment is a question of intention, and presents an issue of fact for the jury. The general rule is that to constitute abandonment there must be shown an intention to abandon and an actual relinquishment of the enterprise. Chapman v. Ellis (Tex. Civ. App.) 254 S. W. 615; Wisconsin-Texas Oil Co. v. Clutter (Tex. Civ. App.) 258 S. W. 265.

Appellee insists that because the jury further found that appellant did not use reasonable diligence in developing the land, and breached its duty of carrying out the essential purposes of the lease, that the lease should have been canceled, since it conveyed only a determinable fee, the primary consideration being a prospective royalty, and that there was an implied obligation resting upon appellant to exercise reasonable diligence in further testing and exploring for minerals after oil was discovered in paying quantities in the first well. On the other hand, the contention of appellant is that because the rent was duly paid and it had drilled the first well within the time specified, which well proved to be a producing well, it has complied with the terms of the lease, and thereby became invested with the mineral estate for a period of five years in the 2,000 acres of which its well is the center, freed from the burden of further rental or duty to further explore until within a reasonable time after the expiration of five years. Appellant further insists that the stipulation which invested it with the title to 2,000 acres, rent free, upon bringing in a producing well, fixed the measure of diligence which it was required to exercise, and that when the diligence to be used is expressed in the contract, there can be no implied obligation to develop. The briefs of both parties discuss at length the case of Grubb v. McAfee, 109 Tex. 527, 212 S. W.

464. In that case Judge Greenwood, after an illuminating discussion, in which numerous authorities are reviewed, announced the conclusion that the lease could not be forfeited for a breach of an implied obligation to continue development after the discovery of oil in one well unless it also appeared that the lessee had abandoned the lease. In that case the lease recited a cash consideration of $1, and conveyed the mineral estate for a term of 20 years and as long thereafter as oil was found in paying quantities. The initial well was commenced and completed to production within the time limited, and a royalty was paid to the lessor Grubb for 60 days when the well ceased to produce. Then two dry wells were drilled by McAfee, the lessee, within 12 months, after which the lessee removed all the machinery and equipment and thereafter conducted no prospecting for about 9 years. Grubb then filed the suit to cancel. The decree of the district court canceled the lease. The Court of Civil Appeals reversed the judgment and rendered it for McAfee, who insisted that because he had performed the conditions of his contract the lease became fixed for the full period of 20 years, and was not subject to forfeiture for abandonment. 164 S. W. 925. The failure to begin drilling within 30 days and to prosecute the work with reasonable diligence to a depth of 300 feet, or to production, was the only ground of forfeiture expressed in the writing. The Commission of Appeals concluded that there was an implied obligation to continue the work of exploration for and production of oil, and that this obligation was not a covenant, but a condition subsequent, the breach of which operated to forfeit the contract. Upon that point Judge Greenwood said:

"We approve the conclusion of the Commission that the law implied the obligation from the defendant in error to exercise reasonable diligence to continue drilling and mining operations on the land after oil was encountered in the first well, but we do not agree that the terms of the contract made this obligation a condition subsequent and authorized a forfeiture of the contract for noncompliance with the obligation. We think that the cancellation of the contract, as adjudged by the trial court, on the facts alleged and proved, can be sustained only by reason of the abandonment of the contract by defendant in error."

Further on in the opinion, after quoting from Johnson v. Gurley, 52 Tex. 222, Harris v. Rather (Tex. Civ. App.) 134 S. W. 755, and numerous cases from other states, holding that an implied covenant for future development was not a condition, he said:

"It is a recognized rule that additions ought not to be made to contracts by implication beyond that which is necessary."

The judgment of the district court canceling the lease was affirmed, because the evidence showed abandonment by the lessee, and

Judge Greenwood suggested that in cases of that character a court of equity was empowered to decree specific performance, and in default of performance under the decree the court could then cancel the lease for abandonment within a few days. All of the principles announced in that case are not applicable to the instant case, because it is clear that the appellant here has never abandoned its 2,000 acres or any part thereof.

The exact question to be decided in this case is: Should the lease be canceled for breach of an implied condition subsequent to further develop the lease during the 5-year period when there is no abandonment, and where the evidence shows that, in addition to the first producing well, appellant had drilled another producer and two dry wells, and that it has been continuously producing oil from the lease since the original discovery and paying appellee the royalties?

The appellee insists that, even though the Grubb-McAfee Case holds that the lease could not be canceled except for abandonment, the Supreme Court had modified that rule in the following five cases decided by Judge Greenwood: Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Thomason v. Ham, 113 Tex. 239, 254 S. W. 316; Munsey v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S. W. 311; and Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601. In the last named case Judge Greenwood said:

"In Grubb v. McAfee, 109 Tex. 535, 212 S. W. 464, this court declined to hold that the implied obligation to continue the exploration for and production of minerals, under a lease similar to that to Underwood, was a condition subsequent, for breach of which the lease might be forfeited. We see no necessity for changing the view on that point expressed in Grubb v. McAfee."

The substance of the court's holding in the Texas Co. v. Davis Case is that the lease did not convey an absolute fee-simple interest in the minerals in place, but granted to the lessee only a determinable fee, conditioned upon the commencement of operations within the time limited and a continuance of such operations during productivity, and that the estate terminated upon cessation of activities by the lessee.

[4-6] The holding in the Stephens County Case is that the lease vested a determinable fee in the lessee which was subject to taxation. In the other four cases, abandonment was clearly shown, and the leases were canceled upon that ground. For that reason, they do not, in our opinion, sustain the appellee's contention in this case where there is no abandonment. This is also true as to the cases of Fisher v. Crescent Oil Co. (Tex. Civ. App.) 178 S. W. 905, and Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196, cited

by appellee. Judge Greenwood says, however, in the Munsey v. Marnet Case, "Expressions may be found in the opinions of this court treating implied mining obligations in oil leases as conditions subsequent," and cites Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396, J. M. Guffey Petroleum Co. v. Oliver (Tex. Civ. App.) 79 S. W. 884, and the Fisher Case, refusing a writ of error in Clutter v. Wis. Texas Oil Co., 233 S. W. 322, where the Court of Civil Appeals reversed the trial court for directing a verdict upon the theory that lessee had abandoned the property. The facts in that case tending to support the issue of abandonment were much stronger than in the instant case. The lease contained an express obligation to complete development, but did not have a forfeiture clause. When the case finally reached the Supreme Court upon the second appeal, it was held that a temporary cessation of development is not necessarily abandonment. 268 S. W. 921. While appellee cites several cases from other jurisdictions tending to support its contention, there is a woeful want of harmony upon the question in other states, and it cannot be said that the law upon the exact question is in any degree settled. Thornton's Law of Oil and Gas (4th Ed.) §§ 121, 122, 195–196a. We conclude from reading the Texas authorities cited above, and many others, that if a covenant for reasonable development after the first producing well was obtained may be implied at all where there has been no abandonment, still a breach of it would not be grounds for forfeiture, and appellee's remedy is an action for damages, and, in the alternative, for specific performance, as declared in the Grubb-McAfee Case and reaffirmed in the Texas Co. v. Davis Case. The contract expressly provides that every producing well shall hold 2,000 acres in a square, of which the well is the center. We think this stipulation means that Burton or his assigns might have held the entire 85,000 acres for the full term of five years by drilling to production one well on each 2,000 acres within the term, because as a whole, the agreement binds the lessee to pay rental at the rate of $1.18 per acre until a producing well is found, and after that that particular 2,000 acres is released from the further payment of rent. The reasonable inference from this provision is that the parties contemplated that the royalties from one producing well upon every 2,000 acres would, at least during the term of the lease, equal or exceed the annual rent, and it was inserted to induce appellant to drill at least one well on each 2,000 acres, thereby testing within the five years the whole area covered by the lease. When the contract is silent as to the extent of further development after the discovery of oil in the initial well, the duty of further development and its extent must be determined in the light of surrounding circumstances.

Appellee's manager, Bob More, testified that 8 dry wells had been sunk within a radius of 1½ miles of the initial well since the discovery of oil there, and it appears that appellant had expended approximately $150,000 in exploration prior to the institution of the suit, which had resulted in only one more well producing 34 barrels per day.

[7-9] Oil and gas contracts are not construed so strongly against lessee in wildcat territory. Masterson v. Amarillo Oil Co. (Tex. Civ. App.) 253 S. W. 908. In the light of these facts, and in view of that provision of the contract expressly providing that one well shall hold 2,000 acres, we seriously doubt the correctness of the jury's finding that appellant had not been reasonably diligent, but since the judgment must be reversed upon another point, we do not rest the reversal upon that issue; nor do we pass upon the appellant's contention that where the contract fixes the measure of diligence the law will not imply another and additional duty. While that is the general rule, Judge Greenwood said in the Grubb-McAfee Case:

"It is a recognized rule that additions ought not to be made to contracts by implication beyond that which is necessary."

We presume that the fact of abandonment created the necessity in that case, which condition does not confront us here. We think the court correctly refused to cancel the lease, but we cannot agree that the trial judge was warranted in entering the peculiar judgment decreeing specific performance. In decreeing specific performance, the court was endeavoring to grant the relief which Judge Greenwood said in the Grubb-McAfee Case was proper; but there is no evidence whatever tending to show that the requirement of one well upon each 40 acres within 6 months until as many as 8 wells should be drilled is equitable. No issue was submitted to the jury requesting it to find what would amount to reasonable development. We cannot presume that the court's finding is correct, since there is no evidence to support such a decree. The error is fundamental.

Reversed and remanded.