**WOODS et al. v. BOST et al.**
No. 3337.

Court of Civil Appeals of Texas. Amarillo.
Jan. 8, 1930.
Rehearing Denied March 19, 1930.

·300

Morgan, Morgan & Britain, of Amarillo, for appellees.

HALL, C. J.

On January 26, 1928, John Q. Bost and wife, joined by S. A. L. Morgan, as plaintiffs, sued the Tyler Oil Corporation, M. F. Woods, and Margie Edgar to cancel an oil lease and remove cloud from title caused by an oil and gas lease which appellants claim to be a valid subsisting lease. The first trial resulted in a judgment for the plaintiffs. Upon appeal, this judgment was reversed and the cause remanded. 14 S.W.(2d) 364. Prior to the second trial all parties amended their pleadings.

The lease sought to be canceled is described as the north 62.6 acres of Sec. 14, block Y–2, Cert. No. 75, G. B. & C. M. B. Ry. Co. surveys in Hutchinson county, Tex. The original lease embracing 400.6 acres was executed and delivered on the 11th day of June, 1923, and was a lease of the premises for five years from the date thereof and as long thereafter as oil or gas, or either, might be produced from the land. It further provided that if no well be commenced on the leased premises, on or before the 11th day of June, 1924, the lease should terminate as to both parties unless the lessee should, on or before that date, pay the lessors the sum of $1 per acre rent, which would operate to postpone the commencement of a well for twelve months. It is further provided that in like manner and upon like payments or tenders, the commencement of a well could be deferred for like periods of the same number of months successively.

The appellees, plaintiffs below, allege that the rentals for deferring the commencement of a well on said land were paid on or before the expiration of the first, second, and third years of the lease, but that no rent was paid on or before the expiration of the fourth year, to wit, on or before the 11th day of June, 1927, and that no well had been commenced in good faith on any of the land described in the original lease, and no oil or gas had been produced therefrom.

The appellees also alleged: That long prior to the 11th day of June, 1927, on to wit, about the 1st day of January, 1927, the Tyler Oil Corporation, then claiming to be the owner of said lease, caused a derrick and two shacks to be built on the 62.6 acres of land hereinbefore described. That the said corporation failed to follow the building of said derrick and shacks by commencing and prosecuting the drilling of a well on said land within a reasonable time thereafter. That sixty days was a reasonable time within which to commence and complete a well to the depth of the producing sands in the

Shannon, Ochsner & Pheiffer and W. T. Brothers, all of Amarillo, for appellants.

vicinity of said land. That at the expiration of sixty days from the building of the derrick and shacks, no well had been commenced, and nothing further done with reference to the development of the lease. That certain tools and machinery had been placed on the premises at the derrick about the 15th day of June, 1927, and that "the bit was spudded into the ground or was let into an excavation made in the ground to the depth of two to five feet," and "thereafter no drilling was done nor was anything done looking to the prosecution of the drilling of said well but said machinery was allowed to stand at said location inactive until the filing of this suit more than six months thereafter. That a well could have been drilled and completed on or before the 15th day of August, 1927, and by reason of the failure of said Tyler Oil Corporation or its successors in interest, to prosecute the drilling of said well to its completion from and after the purported spudding in thereof on or about the 15th day of June, 1927, said lease, if it did not terminate on the 11th day of June, 1927, under the facts hereinbefore set forth, certainly terminated at the expiration of such reasonable time from and after the 15th day of June, 1927, within which a well should have been completed, and plaintiffs here say that such reasonable time expired on or about the 15th day of August, 1927, on which date said lease fully terminated."

Appellees further pleaded, in the alternative, that if any operations were carried on by the owners of the lease prior to the 11th day of June, 1927, or thereafter, or were such that said lease did not terminate on the 11th day of June, 1927, or at the expiration of a reasonable time thereafter within which a well should have been completed by the lessees, then plaintiffs represent that on or about the 1st day of October, 1927, the corporation, then the owner of said lease, abandoned the same and all operations in good faith thereon with the intent and purpose to terminate any connection with said lease. That the appellant M. F. Woods claimed to have succeeded to the rights, if any, of the original lessee as to the seven-eighths working interest in and to the lease, and that the defendant Margie Edgar was claiming and asserting certain rights in and to a one-eighths overriding royalty interest in the gas which might be produced from any well drilled upon the premises.

Appellants Woods and Margie Edgar answered separately, but defended substantially upon the same grounds. They alleged that prior to the 11th day of June, 1927, a standard derrick and two bunk houses had been erected upon the leased premises, that a cellar and slush pit for the derrick had been dug and sufficient tools for spudding in a well had been delivered upon the premises, and a well actually spudded in. That subsequent to the 11th day of June, 1927, a water well was drilled upon the premises to the depth of 220 feet for the purpose of procuring water for drilling operations. That prior to the 11th day of June, 1927, appellee John Q. Bost informed the lessee that unless a rental of $62.80 was paid on or before the 11th day of June, 1927, that the lease would be forfeited. That immediately after the 11th day of June, 1927, Bost asserted that the lease had been forfeited, and that this assertion was communicated to the lessee and to third parties who were interested in the completion of the well. That the reason for the failure of the Tyler Oil Corporation to complete the well after they had commenced it was the conduct of appellees in asserting that the lease had been forfeited. They deny that the lease had ever been abandoned by them.

The court submitted the case to the jury upon special issues, in response to which the jury found:

(1) That following the erection of the derrick on or about the 1st day of January, 1927, the Tyler Oil Corporation did not pursue operations for the drilling of a well on the lease with reasonable diligence;

(2) That tools were procured by the Tyler Oil Corporation from the defendant Woods and placed on the lease not later than June 11, 1927, and such tools were reasonably sufficient to commence the drilling of a well;

(3) That at the time the corporation procured Woods to put the machinery and tools on the lease, it did not in good faith intend to prosecute the drilling of a well;

(4) That sixty days after June 11, 1927, was a reasonable time within which the corporation should have completed the well to the gas bearing sands in the vicinity of the lease;

(5) That Bost first notified the corporation about September, 1927, that he regarded the lease as being forfeited;

(6) That after placing the tools on the premises, the defendant corporation did not use reasonable diligence in prosecuting the drilling of a well prior to the date when Bost first stated to the corporation after June 11, 1927, that he regarded the lease as forfeited;

(7) At the time Bost first told J. L. Tyler, president of the corporation, that he regarded the lease in controversy as forfeited, that Tyler, on behalf of the corporation, admitted that the lease had been forfeited by the corporation;

(8) That prior to the filing of this suit, the Tyler Oil Corporation had not abandoned the lease in controversy.

After the return of the verdict, the court rendered judgment in favor of the appel-

lees, terminating the lease and canceling the same as against the defendants Woods and Margie Edgar.

It appears that after Woods had purchased an interest in the lease, paying for it with the tools which he delivered on the lease, he filed a suit against the Tyler Oil Corporation in the district court of Hutchinson county, alleging that he had been induced to purchase the lease through fraud and misrepresentations, and charging that Tyler had fraudulently induced him to enter into a contract for the drilling of a well on the lease by representing that the corporation had ample money on hand available with which to drill the well, and that the derrick and bunk houses had been paid for. That it had sold the gas for an attractive price. It is alleged that the Tyler Oil Corporation had no funds to pay for drilling or to pay its debts; that its creditors were suing it and that the lease had little or no value. That all of said representations made by Tyler were false and untrue and were made for the purpose of deceiving Woods. That the lumber company and laborers had filed liens for lumber and labor in constructing the derrick and bunk houses. The judgment by default in Woods' favor in this suit was also offered.

Over the objections of the appellants, this pleading and judgment were admitted in evidence, and the action of the court in so doing is a basis for the first two propositions urged by appellants.

The general rule is that voluntary admissions made in a pleading filed in a different suit may be introduced in evidence against the pleader in another action, provided the admissions are relative to the issue to be determined. It is not essential that both actions should be in the same court.

One material issue in this case was the good faith of the Tyler Oil Corporation in its efforts to drill a well on the lease. Woods' contention in the instant case was that a well had been spudded in before the expiration of the time for paying the rent, and that the work was being prosecuted with reasonable diligence, and but for the act of Bost in declaring the lease forfeited, the contract would have been complied with. The facts alleged by Woods in the former suit that the Tyler Oil Corporation had no funds to pay for drilling, or even to pay its debts, that its creditors were suing it, and that the lease had little or no value, that the lumber company which furnished the lumber for the derrick and bunk houses and the laborers who had constructed these improvements, had all filed liens for the purpose of collecting their debts, tended strongly to sustain the contention that the Tyler Oil Corporation was practically insolvent, and could not raise sufficient funds to drill the well, and that its act in having a few tools placed upon the ground and the bit lowered into a hole under the derrick, was a sham.

We think the above rule is applicable, and that the pleadings were properly introduced as admissions against interest. National Cattle Loan Co. v. Armstrong (Tex. Civ. App.) 8 S.W.(2d) 767; Western Oil Fields Corporation v. Nowlin (Tex. Civ. App.) 288 S. W. 554; Wheeler v. Styles, 28 Tex. 240.

The appellants' third proposition is based upon the action of the court in refusing to permit them to recall a witness by the name of Gordon to correct his testimony in chief. The motion was made during the argument.

The statement in the briefs following the proposition does not state even the substance of the bill of exception, but refers us to the bill itself. Although the proposition is improperly briefed (3 Tex. Jur. pp. 897, 899), we have referred to the bill of exception and have concluded that no reversible error is shown. Whether the trial court will permit the case to be reopened, and allow additional testimony from witnesses who have previously testified, and whether witnesses should be permitted to correct their testimony after the argument has commenced are questions largely within the discretion of the trial court, and the action of the court will not be revised unless it is clear that the discretion has been abused. Gordon had testified in such a way that the jury might have inferred that he did not deliver the drilling tools upon the lease until after June 11th. The appellants offered to again put him upon the stand and permit him to correct his testimony so as to show that the tools were delivered on the lease prior to June 11th.

In view of the finding of the jury that the tools were placed on the lease not later than June 11th, the error, if any, is harmless.

By the fourth proposition it is contended that where a case has been once tried in the trial court and on appeal is reversed and remanded, the opinion of the appellate court becomes the law of the case, and the trial judge upon the retrial is bound by said opinion.

We think the statement of the rule in the proposition is too strong. Even if the contention could be made here, since the last opinion was written, both parties have filed amended pleadings and it appears that there is a material difference in the testimony of the witness Woods in the first and last trial. In any event, the former decision of this court in the case constitutes no bar to the further consideration of the same question upon this appeal. Kempner v. Huddleston, 90 Tex. 182, 37 S. W. 1066; Corcanges v.

Childress (Tex. Civ. App.) 280 S. W. 892; Green v. Priddy, 112 Tex. 567, 250 S. W. 656, 658; 4 C. J. 1217.

Under the fifth proposition it is insisted that the building of a standard derrick and two bunk houses, digging a slush pit and cellar, and placing sufficient tools upon the ground to spud in a well, constitutes the commencement of a well. This does not, as a matter of law, constitute the commencement of a well, and in the absence of good faith presents only a question of fact.

It is true that the jury found that tools sufficient to commence the drilling of a well were placed upon the lease not later than June 11th. Woods testified that the cellar and slush pit had been dug prior to June 11th, and that these operations were estimated by the witness Harris as having cost in excess of $5,000. In view of the further finding that these things were not done with the bona fide intention of drilling a well, they do not show performance as a matter of law.

This brings us to the principal contention in this case, and that is as to the right of the lessors to cancel the lease and recover the premises from the defendants, rather than sue for damages. The lease is dated June 11, 1923, and the stipulations material to the question to be considered here are as follows:

"The said lessor, for and in consideration of $200.00 cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines. * * *

"It is agreed that this lease shall remain in force for a term of five years from this date and as long thereafter as oil or gas or either of them is produced from said land by the lessee.

"In consideration of the premises, the said lessee covenants and agrees: * * * If no well be commenced on said land on or before the 11th day of June, 1924, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit * * * the sum of $400.60, which shall operate as a rental and cover the privileges of deferring the commencement of a well for twelve months from said date in like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively and it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred."

This instrument is signed by John Q. Bost and his wife as lessors, and Margie Edgar as lessee.

It appears from the record that on the 6th day of March, 1926, Margie Edgar assigned to Walter C. Irvin the 62.6 acres hereinabove described out of the original lease of 400.6 acres, and while there are no further assignments of this subdivision in the record, it seems to be conceded by both parties that by mesne assignments, the Tyler Oil Corporation had acquired the interest of the original lessee, Margie Edgar, to the 62.6 acres and as such owner contracted with Woods, and that Woods and the Tyler Oil Corporation hold the premises involved under all the stipulations, terms, and conditions of the original lease from Bost and wife to Margie Edgar.

The stipulation in the lease that if no well is commenced on the land prior to June 11, 1924, the lease shall terminate as to both parties unless the lessee shall, on or before that date pay or tender the rental, when construed with the further stipulation that the property is conveyed for the sole and only purpose of mining and operating for oil and gas, make an "unless lease." Of leases of this class, it is said in Thuss Texas Oil & Gas, § 70: "In this type of lease, the lessee has not agreed to either drill or pay the rental stipulated in the lease and the lessor does not have the alternative remedy of forfeiture or the collection of the rental. The lessor only has the right to invoke a forfeiture of the rights and estate created and conveyed by the lease. * * * When an estate is on conditional limitation, the words of contingency are regarded as a part of the limitation and thus name the alternative limit for the duration of the estate and do not have the effect of merely cutting off an estate before its proper termination which is the effect of a condition subsequent. Since in the estate of conditional limitations, the contingency is a proper termination of the estate, after it has happened, no estate can possibly remain in the grantee and the estate immediately reverts to the grantor without any act on his part. While there may not be entire harmony as to the classification of the estate granted by this lease, there is a complete consistency reflected in the cases which hold there is an ipso facto termination"—citing Ford v. Cochran (Tex. Civ. App.) 223 S. W. 1041; Weiss v. Claborn (Tex. Civ. App.) 219 S. W. 884; McLaughlin v. Brock (Tex. Civ. App.) 225 S. W. 575, 577; Bailey v. Williams (Tex. Civ. App.) 223 S. W. 311; Young v. Jones (Tex. Civ. App.) 222 S. W. 691; Witherspoon v. Green (Tex. Civ. App.) 274 S. W. 170; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779.

As stated by Judge Greenwood in W. T. Waggoner Estate v. Sigler Oil Co. (Tex. Sup.)

19 S.W.(2d) 27, 30: "The correct rule seems to be that, while the usual 'drill or pay' clause in an oil lease does introduce a condition subsequent for the benefit of the lessor alone, yet, as said by Mr. Summers, 'where the "unless" drilling clause· is used, a failure of the lessee to drill or pay a stipulated sum of money ipso facto terminates the lease, without the necessity of re-entry, action or their equivalents by the lessor. For this reason the interest created in the lessee by such lease cannot be one terminable by breach of condition subsequent. Some courts have designated them options or optional leases, but the interests created by them are perhaps better classified as estates upon common law limitation, wherein the interests in the grantee or lessee continue until the happening of the event upon which they terminate.'" Citing Summers Oil & Gas, pages 483, 506–512.

In the same case, Judge Greenwood says that the estate acquired by the so-called lessee, and his assigns, holding under an unless lease, is a determinable fee which is lost on cessation of the use of the land for purposes of oil and gas exploration, development and production. Citing Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 173, 254 S. W. 290, 29 A. L. R. 566; Texas Company v. Davis, 113 Tex. 331, 254 S. W. 304, 255 S. W. 601; Munsey v. Marnet Oil & Gas Co., 113 Tex. 220, 254 S. W. 311; Robinson v. Jacobs, 113 Tex. 239, 254 S. W. 309; Thomason v. Ham, 113 Tex. 246, 254 S. W. 316; to which we add the case of Mon-Tex Corporation et al. v. Poteet, et ux. (Tex. Sup.) 19 S. W. (2d) 32, 33.

"A qualified or determinable fee is an estate limited to a person and his heirs with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end. Because the estate may last forever, it is a fee, and because it may end on the happening of the event, it is called a determinable or qualified fee. Thus where an estate is conveyed in fee for a specified purpose 'and no other' the fee is a qualified fee, determinable upon the cessation of the use of the property for that purpose. * * * The words 'so long as' or 'during the time that' the property is used for a certain purpose, usually create an estate subject to determination upon conclusion of that issue rather than a fee with condition subsequent." 10 R. C. L. 652.

In 3 Thompson on Real Property, §§ 2105, 2106, a determinable fee is defined and distinguished as follows: "They are sometimes modified fees and include what is generally designated base fees. Such estates are recognized in some states as descendible. An estate which is to continue "till the happening of a certain event is not upon a condition subsequent because upon the happening of that event, the estate ceases by its own limitation without a re-entry by the grantor. Such an estate is a fee, because it may last forever. It is determinable because it may end with the happening of the event named. * * * The proper words for the creation of such an estate are 'until,' 'during,' 'so long as' and the like. * * * Where an estate is conveyed in fee for a specified purpose and no other,·the fee is a base fee, determinable upon the cessation of the use of the property for that purpose."

 The finding of the jury that no well was commenced upon the lease in good faith prior to June 11, 1927, is sustained by the testimony. A· derrick and two bunk houses had been built in December, 1926, but nothing further was done toward development until immediately prior to June 11, 1927. The evidence is conflicting as to when Bost first notified the corporation that he regarded the lease as being forfeited, but the jury found that Bost first notified the Tyler Oil Corporation about September, 1927. In any event, Tyler had not paid the annual rental, and was endeavoring by selling stock to acquire sufficient funds to commence a· well. The evidence shows that two truck loads of machinery had been hauled from New Mexico and delivered on the lease a day or two prior to June 11th, but it further appears that six truck loads of machinery would have been required to provide a complete drilling outfit to develop a well like the one proposed upon this lease. It further appears that the cable was not long enough to complete such a well and that the tools were sufficient only to make a gesture toward spudding in the well. It appears that the corporation and Woods were both financially unable to drill the well, but were hoping to secure funds for that purpose by selling stock, and that they failed to procure sufficient funds in time. In order to hold a lease of this character, the lessee who fails to pay the annual rental required to postpone the drilling of a well must make a bona fide effort to drill upon the lease. Since the jury found upon sufficient evidence that no good faith effort had been made by Woods or the Tyler Oil Corporation to comply with the obligation of the contract in drilling a well, the right of plaintiffs to have the lease canceled cannot be seriously questioned.

In Thuss Texas Oil & Gas, § 80, it is said: "The commencement of drilling operations is largely a question of fact in which the element of good faith is quite an important factor"— citing Moore v. West (Tex. Civ. App.) 239 S. W. 710; Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 108; Jackson v. Anglin (Tex. Civ. App.) 252 S. W. 1085; Street v. Masterson (Tex. Civ. App.) 277 S. W. 407; Heard v. Pratt (Tex. Civ. App.) 257 S. W. 660.

In Mills-Willinghams Law of Oil & Gas, 135, § 84, it is said: "The unloading of the timber for the derrick upon the lease, staking the location and digging a slush pit upon the last day, if followed up by actual drilling in good faith within a reasonable time, is a

sufficient compliance with the provision without actually making a hole. The mere spudding in which is not followed by actual drilling operations within a reasonable time is not commencement of operations."

Considerable evidence was introduced bearing upon the issue of good faith of the defendants, and their efforts toward further drilling operations following June 11th, from which the jury concluded that after placing the tools on the premises, the defendants did not use reasonable diligence toward development prior to the time Bost first notified the corporation that he considered the lease as forfeited, and the jury found upon sufficient testimony that Tyler admitted to Bost that the lease had been forfeited, presumably for failure to develop. In view of these findings, the issue of abandonment and the finding of the jury thereon, becomes immaterial. This being a lease which, by express stipulation, fixes the obligation of the lessee and according to the legal effect of a breach thereof authorizes a cancellation by the lessor, there is no question of an implied covenant in the case. An implied covenant to further develop, as in the Sigler and Davis Cases, supra, could not arise until after the drilling of a test well.

The appellees have objected to the consideration of appellants' propositions because they are simply abstract statements of rules of law and do not point out any error committed by the court prejudicial to appellants' rights. These objections are well taken, but in view of the fact that the briefs present the main issues in a manner which warrant their consideration, and of the further fact that if we should strike appellants' briefs, we feel that, under the peculiar circumstances, time should be given to file amended briefs, we have decided to consider the principal propositions urged, with no intention of setting a precedent which shall govern our action in cases in the future where insufficient briefs have been filed.

Because we think a proper judgment has been entered, and no reversible error has been shown, the judgment is affirmed.