E. W. MUNSEY ET AL. v. MARNET OIL AND GAS COMPANY.

No. 3701.  Decided June 30, 1923.

(254 S. W., 311.)

#### 1.—Oil and Gas—Conveyance—Abandonment by Grantee.

Conveyances of the oil, gas and minerals in land, for exploration and production with royalties to the grantor, to be good for a term of years or so long as oil, developed by grantees, could be produced in paying quantities, recited that the interest granted was not as a mere franchise but intended as a conveyance of the property described for the purpose mentioned. Paying wells were developed by grantee within the time limited by the contract. *Held*, that the grants and grantee's performance passed title to corporeal property, not absolutely, but for mining purposes only, and such title did not endure after abandonment by grantees of their contract and operations for mineral discovery and production. Such abandonment forfeited their title; and no conveyance was necessary to reinvest grantors with the mineral rights. (Pp. 217-220).

#### 2.—Cases Followed.

Stephens County v. Mid-Kansas Oil and Gas Co., 113 Texas, 160; Texas Co. v. Davis, 113 Texas, 321; Robinson v. Jacobs, 110 Texas, 231; approved and followed.

#### 3.—Abandonment—Question of Fact.

The evidence on the question of abandonment is held to present a question of fact, perhaps capable of further development, and did not warrant the Court of Civil Appeals in holding it, as matter of law, insufficient to show such abandonment. (Pp. 219, 220).

#### 4.—Same.

A reasonable and temporary cessation of mining operations by the grantee would not terminate the grant. (P. 220).

#### 5.—Mining Rights—Grant—Consideration.

Whether a recital of a money consideration (one dollar) for a grant of mining rights was sufficient to support it or not (National Oil and Pipe Line Co. v. Teel, 95 Texas, 586), where the obvious purpose of the contract was benefit of the grantor by royalties from mining the title of grantee was one capable of abandonment. (Pp. 219, 220).

#### 6.—Cases Discussed.

Benavides v. Hunt, 79 Texas, 394; J. M. Guffey, Pet. Co. v. Oliver, 79 S. W., 884; Fisher v. Crescent Oil Co., 178 S. W., 905, and rulings in this case on former appeal discussed. (P. 220).

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Navarro County.

Munsey and others sued the Marnet Oil and Gas Co. for cancellation of oil leases. Judgment was rendered for plaintiffs. On a judg-

ment rendered by the Court of Civil Appeals on appeal (232 S. W., 867) Munsey et al. obtained writ of error.

*Callicutt & Johnson,* for plaintiffs in error.

The evidence of abandonment presenting a question of fact, it was error for the appellate court to render judgment against appellees on the ground of its insufficiency to sustain the verdict. Choate v. Railway Co., 91 Texas, 406; Post v. State, 106 Texas, 500; Electric Exp. & Bag. Co. v. Ablon, 218 S. W., 1033; Wisdom v. Chicago & R. I. Ry. Co., 231 S. W., 344.

Defendant in error did not acquire a vested title that could not be lost by voluntary abandonment. Grubb v. McAfee, 109 Texas, 531; Munsey v. Marnet Oil and Gas Co., 199 S. W., 689; Fisher v. Crescent Oil Co., 178 S. W., 905; Texas Co. v. Curry, 229 S. W., 643; Decker v. Kirlicks, 216 S. W., 385; Benavides v. Hunt, 79 Texas, 396; Pierce-Fordyce Oil Assn. v. Woodrum, 188 S. W., 245; National Oil and Pipe Line Co. v. Teel, 95 Texas, 586; Bailey v. Williams, 223 S. W., 311; Hall v. McClesky, 228 S. W., 1004; Witherspoon v. Staley, 156 S. W., 557.

Whether or not, as an abstract proposition, forfeiture arises from voluntary discontinuance of production of oil, the pursuit of which was the sole consideration for the lease, still by virtue of the terms of the lease and the purpose and only consideration upon which it rests (delivery of the royalties) the lease would come to an end if operations were permanently abandoned and the jury having found from competent evidence that the leases had been abandoned, appellant is thereby precluded in any event. Munsey et al. v. Marnet Oil & Gas Co., 199 S. W., 689; Grubb v. McAfee, 212 S. W., 464; Guffey Petroleum Co. v. Oliver, 79 S. W., 884; Owen v. Petroleum Co., 169 S. W., 192; Superior Oil & Gas Co. v. Mehlin, 138 Amer. State Reports, 942; Huggins v. Daley, 99 Fed., 606; Benavides v. Hunt, 79 Texas, 383; Emory v. League, 31 Texas Civ. App., 474, 97 Texas, 631—writ of error refused; Bay State Petroleum Co. v. Penn Lubricating Co., 87 S. W., 1102; Witherspoon v. Staley, et al., 156 S. W., 559; Rawlins v. Armel, 70 Kansas, 778, 79 Pacific, 683; Dickey v. Coffeyville Brick Co., 76 Pacific, 398; Ahrns v. Chartiers Valley Gas Co., 188 Pa. State, 249; Bartley v. Phillips, 179 Pa. State, 175; Karns v. Tanner, 66 Pa., 297; Ohio Oil Co. v. Detamore, 165 Ind., 243, 73 N. E., 906; 27 Cyc., 739; Black on Rescission and Cancellation, Vol. 2, Section 471: Thornton, The Law of Oil & Gas, Vol. 1, Section 188.

*Chas. K. Lee,* as amicus curiae, filed in support of the position of plaintiff in error an argument and citation of authorities on similar questions which had been submitted in the case of Texas Co. v. Davis.

*W. J. McKie* and *Richard Mays,* for defendant in error.

The fee simple title to the mineral estate in the Polk and Robbins tracts of land, was vested absolutely in appellant. All conditions upon which the property was conveyed had been complied with. The property was not subject to forfeiture, based on the ground of alleged abandonment, because of failure to pump the wells for a period of time properly accounted for. The duty to pump the wells after full development of the property, is by reason of an implied covenant, upon which forfeiture will not be predicated. Appellees' remedy was, to compel operations such as they thought proper, or to sue for damages, or both. Appellees did sue for and recover damages, in the sum of $1146.25 (S. 176), as compensation for the value of royalty to which they were entitled on oil which should have been produced on the property during the period of cessation in pumping of the wells. Grubb v. McAfee (Sup.), 212 S. W., 464; McCallister v. Texas Co., 223 S. W., 859; Pierce v. Oil Co., 225 S. W., 193; O'Neil v. Sun Co., 123 S. W., 172; Wade v. Madison, 206 S. W., 119; Harris v. Rather, 134 S. W., 755, writ denied; Kachelmacher v. Laird, 92 Ohio St., 333, 110 N. E., 935; Harris v. Oil Co., 57 Ohio St., 131, 48 N. E., 506; Poe v. Ulrey, 233 Ill., 65, 84 N. E., 50; Kleppner v. Lemon, 176 Pa., 511, 35 Atl., 109; id., 198 Pa., 581, 48 Atl., 483; Texas Co. v. Daugherty, 107 Texas, 226; Benavides v. Hunt, 79 Texas, 383; Southern Oil Co. v. Colquitt, 69 S. W., 169; Guffey v. Smith, 237 U. S., 101; Witherspoon v. Staley, 138 S. W., 1191; Allegheny Oil Co. v. Snyder, 106 Fed., 764; Priddy v. Green, 220 S. W., 249, par. 5.

The evidence is insufficient to support the finding, that appellant abandoned the mineral estate involved in the suit, and for this reason should be set aside and a new trial granted. Benavides v. Hunt, 79 Texas, 383; Fisher v. Crescent Oil Co., 178 S. W., 907, (bot. page); Decker v. Kirlicks (Sup), 216 S. W., 385 McCallister v. Texas Co., 223 S. W., 859; Pierce v. Oil Co., 225 S. W., 193; Tickner v. Luse, 220 S. W., 578.

*Presley K. Ewing,* as *amicus curiae* filed argument and citation of authorities in support of the positions of defendant in error maintained by him in the pending case of Texas Co. v. Davis.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Mary B. Robbins, owner of the 76.9 acres of land in Navarro County, executed the following instrument, on November 2, 1898, towit:

"Know all men by these presents: That I, Mary B. Robbins, of Kingston, Mass., the party of the first part, in consideration of the

sum of $5.00 paid by W. H. Staley, of Pennsylvania, party of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold, and conveyed, and do by these presents grant, bargain, sell, and convey, unto the said parties of the second part, their heirs, assigns, all of the oil, gas, and coal and other minerals in and under the following described land, together with the rights of ingress and egress at all times for the purpose of drilling, mining, and operating for minerals, and to conduct all operations and lay all pipe necessary for the production, mining, and transportation of the oil, gas, water, or other minerals, reserving, however, to the party of the first part the equal one-eighth of all oil produced and saved upon said premises, to be delivered in the pipe line to the credit of the party of the first part free of charge. If coal is found, the parties of the second part agree to pay the first party four cents per ton for every ton of the same that is mined and marketed, payable monthly. If gas or other minerals are found, second party agrees to ——— first party one-tenth of the .net produce each year, payable monthly for the product of each well, while the same is being used off the premises. Said land being of the following description to wit: (Here follows description.) To have and to hold the above-described premises unto the said parties of the second part, their heirs and assigns, upon the following conditions: In case operation for either the drilling of a well for oil, mining, or other minerals is not begun and prosecuted with due diligence within thirty days from this date, then this grant shall immediately become null and void as to both parties.

"In case the parties of the second part should bore or discover either water, oil, or other minerals within the time above prescribed, then and in that event this lease, incumbrance, or conveyance· shall be in full force for twenty years from the time of the discovery of said product, or as long as oil can be produced in paying quantities.

"Whenever sales are being made of the product produced on the land above described, a settlement therefor shall be made at the end of each quarter.

"This lease is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purposes herein mentioned, and it is so understood by both parties to this contract.

"It is understood between the parties of this agreement that all conditions between the parties hereto shall extend to their heirs, executors, administrators, and assigns.

"And the said Staley hereby agrees to bore not less than six wells within one year from the making of this lease, provided paying wells can be found on said tract, and will also bore six wells during the next year thereafter, should paying wells justify such expenditures.

"It is further agreed that in case the said Staley is unwilling to bore said wells, the said party of the first part shall have the right to bore same, provided there shall be preserved to each well then bored by said Staley a surrounding territory of not less than seven acres of land."

W. A. Polk and wife M. J. Polk, owners of 83.3 acres of land in Navarro County, executed the following instrument, on August 10, 1898, towit:

"Know all men by these presents: That W. A. Polk and M. J. Polk, of Navarro County, Texas, of the first part, in consideration of the sum of one dollar to said first party paid by T. J. Carmody and F. P. Davis, the parties of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold, and conveyed, and do by these presents grant, sell, bargain, and convey, unto the said party of the second part, their successors and assigns, all oil, gas, and coal or other minerals in and under the following described land, together with the right of ingress and egress at all times for the purpose of drilling and operating for oil, gas, water, coal, and other minerals, and to conduct all operations and lay all their pipes necessary for the production and transportation of oil, gas, water, or other minerals, and to erect all buildings and machinery necessary to the conduct of their business thereon, reserving however to the first party the one-eighth part of the oil, coal, and other minerals produced and saved from said premises, to be delivered in second party's pipe line to the credit of first party, free of charges, said land being of the following description, to wit: (Here follows description.)

"To have and to hold the above-described premises unto the parties of the second part, their successors and assigns and legal representatives on the following conditions:

"(1) If oil, gas, coal, or other minerals are found second party agrees to pay one-eighth part to first party while the same is being used off the premises.

"(2) Wherever first party shall request it, second parties shall bury all oil or gas lines and pay damage done to growing crops by reason of burying and removing said lines.

"(3) No well shall be drilled nearer than 100 feet to the house or barn on said premises.

"(4) This lease shall become null and void at the end of thirty days from date unless second parties have completed boring the first well before that date, provided, however, that this lease may be kept in force by payment by said second parties until the above-mentioned well is completed by second parties.

"(5) The second parties shall have the right to use sufficient gas, oil, and water to run all necessary machinery on this lease and ad-

joining leases owned by them, and also the right to remove all their property at any time, including all piping, casing, tubing, jack rods, and other well appliances used in connection and the development herein contemplated.

"(6) It is understood between the parties to this agreement that all conditions between the parties hereto shall extend to their heirs, executors, and assigns."

Plaintiffs in error have acquired the title of Mary B. Robbins to the tract of 76.9 acres and the title of W. A. Polk and wife to the tract of 83.3 acres. Defendant in error holds the interests and rights granted to Staley, Carmody and Davis by the instruments hereinbefore copied, unless terminated or lost.

The wells expressly mentioned in both leases were sunk by the respective lessees within the times stipulated and produced oil in paying quantities.

In 1913, this suit was instituted by plaintiffs in error, to cancel the instruments above set out, on the ground that the grantees and their assigns, including defendant in error, had abandoned their contracts and refused to perform their obligations to the grantors and their assigns, and had abandoned all operations for minerals. Plaintiffs in error also sought to recover damages.

A jury trial resulted in a verdict and judgment for plaintiffs in error. On appeal, the judgment of the trial court was reversed and the cause was remanded on insufficiency of the evidence to support the jury's verdict. On rehearing, judgment was rendered by the Court of Civil Appeals against plaintiffs in error, save on their causes of action for damages. 232 S. W., 867.

The petition for writ of error complains of the judgment of the Court of Civil Appeals, on rehearing, because: first, abandonment had divested defendant in error and its vendors of any right, title or interest in the lands sued for, and would entitle plaintiffs in error to a decree removing the cloud from their title cast by the claim of defendant in error; and, second, there was evidence to take the issue of abandonment to the jury, so as to preclude determination of the issue as one of law by the Court of Civil Appeals. On the other hand, it is strongly argued in behalf of defendant in error that Staley and Carmody & Davis and their assigns became invested with a perfect legal title and an absolute fee simple title to the minerals which could not be destroyed save by written conveyance or by judgment.

On a previous appeal, the Dallas Court of Civil Appeals decided that the instruments executed by Mary B. Robbins and by Polk and wife evidenced sales of the minerals in place, and that the grants were absolute, *for the purposes contemplated by the parties,* for the period of 20 years or as long as oil in paying quantities could be

produced, after the express conditions subsequent as to successful drilling were complied with. The court flatly rejected the view that the grantees could have or enjoy any estate in the minerals or land after all mineral operations were abandoned, saying:

"The only consideration moving to the grantors in the leases, other than the one-eighth interest in the oil which might be produced and saved, was $5. Without going to the extent of holding that such sum would in no case constitute a sufficient consideration, it is, we believe, correct in this case to say that obviously the parties to the grant, in view of its provisions, did not regard such sum the real consideration for the grant, but, on the contrary, indulged the hope and expectation that oil in paying quantities would be found beneath the surface of the land, and, when so found, the one-eighth portion thereof reserved by the grantors when delivered in the pipe line to the credit of the grantees in order that it might be marketed was to constitute the real consideration for the grants. Such being the purpose and intention of the parties, it was the duty of the grantees to continuously operate the wells in the manner contemplated by the undertaking; and if it cannot be said that the duty to continuously develop and produce the lands' mineral resources in a reasonably diligent manner, after discovery thereof in paying quantities, is not expressly provided for by the terms of the grant, then such duty unquestionably arises by implication. Such implication arises upon the provisions in the leases reserving to the grantees the right of ingress and egress over the surface land, and right to lay pipes for both production and transportation of all minerals when discovered and produced, and the duty imposed upon grantees to deliver to grantors in a pipe line their share of oil and to pay for same quarterly. These provisions suggest without discussion the intention of the parties, and what they contemplated. Clearly, it cannot be said that such provisions contemplate the operation of the wells at the will of the grantees, any more than that the right to operate by grantees could be divested at the will of grantors. Fisher v. Crescent Oil Co., supra, in our opinion presents a correct discussion of the mutual obligations of the parties under such contracts or leases after the discovery of oil in paying quantities." Munsey v. Marnet Oil & Gas Co., 199 S. W., 689.

In the case of Fisher v. Crescent Oil Co., 178 S. W., 905, a conveyance was executed, for a cash consideration and promised royalties, of minerals in place, with appurtenant rights, for the purpose of drilling for and producing the minerals, for twenty-five years and as much longer as minerals could be produced in paying quantities, conditioned that the conveyance should be void in case operations for drilling for oil, gas, or other minerals were not commenced and prosecuted with due diligence on or before a fixed date. It was held,

in the lamented Chief Justice Huff's carefully considered opinion, that while the lessee acquired a vested estate in the minerals and land, of indefinite duration, yet there was inseparable from such estate a continuing duty to mine and operate the land for minerals, which was utterly inconsistent with abandonment of the mining enterprise.

The last appeal herein was to the Texarkana Court of Civil Appeals, where both Robbins and Polk conveyances were held not to be conveyances of minerals in place or of other corporeal property, but were held to be grants of mere incorporeal rights and therefore subject to abandonment. The issue of abandonment was further determined against plaintiffs in error, as though there had been no evidence to warrant the submission of the issue to the jury.

In our opinion, both contracts or grants passed title to corporeal property—not absolutely—but for mining purposes only, and title of such nature as to be incapable of enduring after abandonment of the contracts or abandonment of operations for mineral discovery and production. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160; The Texas Company v. Davis, 113 Texas, 321; Robinson v. Jacobs, 113 Texas, 231. Furthermore, the evidence was such as to preclude the Court of Civil Appeals from determining as a matter of law, that there had been no abandonment.

Both conveyances grant, bargain, sell and convey the minerals as they lie in the land—for the single purpose of drilling and mining operations. Every specified additional right granted is to enable the grantees to prosecute mining operations. The prime inducement to execute the conveyances is promised royalties which could never accrue save through mineral production. While the conveyance by Mary B. Robbins was to continue in force for twenty years after the discovery of oil or as long thereafter as oil could be produced in paying quantities, it was distinctly specified, as if to draw the distinction between this conveyance and one passing an absolute, unqualified legal title for any term, that this conveyance was always to be understood as having been made for the purposes set forth on its face, that is, mineral exploration and development. The grant by Polk and wife containing no words otherwise defining its term, it would seem clear that, under the interpretation most liberal to the grantees, it could last no longer than the period of mineral production. This latter grant is also particular to save the right of the grantee to remove at any time all things necessary to effectuate the sole purpose of the grant. It is inconceivable that any grantor expected his property to be bound after this right of removal had been exercised, without expectation of return to the premises. Notwithstanding the expressions in the opinion in National Oil & Pipe Line Co. v. Teel, 95 Texas, 586, we are not prepared to affirm that

the consideration recited in the conveyance by Polk and wife would not support their grant. By its terms the grant was void unless the grantee had completed a test well within thirty days. Viewing the two instruments from beginning to end, whatever estate or right was acquired under either of them terminated with the mining operations contracted for. We do not mean that any necessary or reasonable or temporary cessation of mining operations would terminate the grants. But, deliberate intent to abandon the mining contracts is utterly inconsistent with any right to longer hold that which necessarily hampers the opposite contracting parties or their successors in title.

Expressions may be found in the opinions of this Court treating implied mining obligations in oil leases as conditions subsequent, such as Benavides v. Hunt, 79 Texas, 394. And, the court denied a writ of error in J. M. Guffy Petroleum Co. v. Oliver, 79 S. W., 884, where similar expressions were used. To the same effect are portions of the opinion in Fisher v. Crescent Oil Co., supra, approved on the first appeal, in this case. 199 S. W., 687. But, we find nothing from this court to give support to the theory that one can repudiate his drilling obligations and still hold the estate which is granted for the sole purpose of securing performance of such obligations. The doctrine seems to have scant support in the American decisions.

Our discussion of the questions presented, in the above cited cases of Stephens County v. Mid-Kansas Oil & Gas Co., The Texas Company v. Davis, and Robinson v. Jacobs, makes it unnecessary to extend this opinion.

The case having been disposed of under rules of law other than those here announced, and the judgment of the trial court having been reversed on a ruling of the Court of Civil Appeals as to the insufficiency of the facts, and not being satisfied that the case is not capable of further development, it is ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed, and that the case be remanded to the District Court for a new trial in accordance with this opinion.

*Reversed and remanded.*