## W. T. WAGGONER ESTATE v. SIGLER OIL CO. (No. 654–4523.)

(Commission of Appeals of Texas, Section B. June 9, 1926.)

1. Mines and minerals ⬅78(2)—Lessee under oil lease held to have determinable fee which ceases, authorizing cancellation, on breach of implied covenant for reasonable diligence in development, though there be no complete abandonment.

In lease of land solely for mining and operation for oil, and chiefly in consideration of royalties, lessee has a determinable fee, ending, and authorizing cancellation, on breach of implied covenant for reasonable diligence in development, though there be no complete abandonment.

2. Appeal and error ⬅672.

Fundamental error must be apparent on face of record, and does not include one discoverable only by search, which the court is not required to make, of the statement of facts.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the W. T. Waggoner Estate against the Sigler Oil Company. Judgment granting relief less than asked was on appeal by both parties reversed by the Court of Civil Appeals (276 S. W. 936), and plaintiff brings error. Reversed and rendered.

Berry, Stokes & Killough, of Vernon, and F. B. Walker and Thompson, Barwise & Wharton, all of Fort Worth, for plaintiff in error.

Bullingtin, Boone & Humphrey and Jno. B. King, all of Wichita Falls, and Bonner & Storey, of Vernon, for defendant in error.

SPEER, J. Sigler Oil Company is the owner by assignment of 3,000 acres out of that certain 85,000 acres described in a lease agreement between Electra W. Wharton et al. and W. G. Burton, which said lease is as follows:

"Agreement, made and entered into the 27th day of January, 1919, by and between A. B., Wharton and Electra W. Wharton, his wife, of Dallas, Tex., and W. T. Waggoner of Fort Worth, Tex., hereinafter called lessor (whether one or more), and W. G. Burton, of Fort Worth, Tex., hereinafter called lessee, witnesseth:

"That the said lessor, for and in consideration of $100,000 dollars cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, have granted, demised, leased, and let, and by these presents do grant, demise lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas of laying of pipe lines and of building tanks, powers, stations, and structures thereon to produce, save, and take care of said products, all that certain tract of land situate in the counties of Wilbarger and Baylor, state of Texas, described as follows, to wit:

"All of the land which lessor now owns, excepting one section around each of the four improvements now on said land amounting to 85,000 acres, more or less, fully described and shown by plat of said land attached hereto. Annual rental provided for herein, to wit $100,-000 per year, payable annually in advance, on the 27th day of each January, during the life of said lease to be placed at the First National Bank, Fort Worth, Tex.; provided each producing well shall hold 2,000 acres in a square, said well to be the center, and said 2,000 acres shall be released as to further annual rental. Provided, also, that the lessor shall have the right to lay his own pipe line to the pipe line or storage of the lessee, for the handling of his own royalty. The lessee agrees to pay seven-eighths of the increase in tax on said land by virtue of oil and gas values, provided also the lessor shall have the option of taking his one-eighth of the gas instead of the. $200 per well.

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises, the said lessee covenants and agrees:

"(1) To deliver to the credit of lessor, free of cost, in the pipe lines to which they may connect their wells, the equal one-eighth part of all oil produced and .saved from the leased premises.

"(2) To pay the lessor two hundred ($200.00) dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises and lessor to have gas free of cost from any such well for all stoves all inside lights

in the principal dwelling house on said land during the same time by making his own connections with the well at his own risk and expense.

"(3) To pay lessor for gas produced from any oil well and used off the premises at the rate of $200 per year, for the time during which such gas shall be used, said payments to be made each three months in advance.

"If no well be commenced on said land on or before the 1st day of June, 1919, this lease shall terminate as .to· both parties, allowing reasonable time for unavoidable delays.

"If the said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in the proportion which interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of cost, gas, oil, and water produced on said land for all operations thereon, except water from wells and tanks of lessor, without permission of lessor.

"When requested by lessor, lessee shall bury their pipe line below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn now on said premises without the written consent of lessor. Lessee shall use due diligence in keeping all gates closed and trespassers out of leased land.

"Lessee shall pay for damages caused by all operations to growing crops on said land.

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or. assignment, or a true copy thereof; and it is hereby agreed that, in the event this lease shall be assigned as to a part or parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rentals due from him or them, such default shall not operate to defeat' or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee, or any assignee thereof, shall make due payment of said rental.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above-described lands, in the event of default .of payment by lessor and be subrogated to the rights of the holder thereof.

"In testimony whereof we sign this the 27th day of January, 1919."

The W. T. Waggoner estate is the owner of the land and of the rights in the lease of the original lessor. W. T. Waggoner estate sued the Sigler Oil Company to cancel the lease and to remove cloud from title to the land created by the registration of the lease

on the ground of abandonment, and, in the alternative, for the reason the oil company had failed and refused to carry out the purposes of the lease or to carry on the enterprise which the lease created, or to use the property for the production of oil and the development of the land for oil as was the purpose of the lease. The plaintiff, as a further alternative, sought a decree of specific performance. The case was tried before a jury on special issues, which, together with the answers thereto, are as follows: .

"(1) Did the defendant, Sigler Oil Company, and its predecessors in title, prior to January 29, 1924, use reasonable diligence in developing for oil the lands described in the lease in question? Answer: No.

"(2) Did the defendant, Sigler Oil Company, prior to January 29, 1924, breach the duty of carrying out the essential purposes of the lease in question? Answer: Yes.

"(3) Did the defendant, Sigler Oil Company, prior to January 29, 1924, abandon the duty of carrying out the essential purposes of the lease in question? Answer: No."

Upon these answers the trial court refused to enter a judgment of cancellation, but did render judgment for a specific performance on the part of the Sigler Oil Company, outlining a plan for the drilling of eight wells upon the undeveloped portion of the lease held by the oil company. It appears from a bill of exceptions approved by the court that it refused the motion of plaintiff for judgment for cancellation of the lease upon the view "that the finding of the jury of a failure to reasonably develop, there being no finding in favor of the plaintiff upon the issue of abandonment, was not sufficient under the law to justify a cancellation of the lease." Both parties appealed, and the Court of Civil Appeals reversed the judgment, and remanded the case. 276 S. W. 936.

[1] The important question arises upon plaintiff in error's first assignment to the effect that, defendant in error's title being only a determinable fee under the grant from Wharton and others, and the jury having found that defendant in error had not used reasonable diligence in developing for oil the lands described in the lease, and had breached the duty of carrying out the essential purposes of the lease, its title had ended, and the lease should have been canceled as a cloud upon the title. Defendant in error has tersely stated the respective contentions of the parties as follows:

"It affirmatively appears that the sole question presented by the appeal of the W. T. Waggoner estate is whether or not in Texas a lease will be canceled or forfeited for failure on the part of the lessee to comply with the implied covenant of reasonable development. It is the contention of the Waggoner estate that the Supreme Court of this state now so holds; on the contrary, it is the contention of the defendant in error that the Supreme Court of this state does not so hold."

Upon this point the trial court and the Court of Civil Appeals have held with defendant in error. Let us examine the Supreme Court authorities:

First, the case of Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, is most relied upon by defendant in error, and is made the basis for the decision in large part by the Court of Civil Appeals. That was a suit to cancel an oil lease for abandonment by the lessee. The lease required the lessee to begin the drilling of a well within 30 days from the date thereof, and to prosecute the work with diligence to a depth of 300 feet, unless oil should be found in paying quantities at a less depth. The conveyance was for the term of 20 years from date, and as long thereafter as petroleum, oil, gas, coal, or minerals were found in paying quantities. It stipulated for one-tenth of all the oil produced and saved from the land to be delivered free of cost in tanks or pipe lines by the lessee. The well was drilled within the time stipulated, and oil was found at the depth of about 250 feet, on which royalty was paid to the lessor for about 60 days, when the well ceased to produce. Within the next 10 months two wells were sunk by the lessee without finding oil, and thereupon he removed all machinery, equipment, and supplies from the land, and for some 9 years had conducted no prospecting or drilling or producing operations on the land. Upon the trial the lessee did not deny that he intended to abandon the contract when he ceased to drill on the land, and indicated no desire or purpose to resume operations. The Supreme Court said:

"We approve the conclusion of the commission that the law implied the obligation from defendant in error to exercise reasonable diligence to continue drilling and mining operations on the land after oil was encountered in the first well, but we do not agree that the terms of the contract made this obligation a condition subsequent and authorized a forfeiture of the contract for noncompliance with the obligation. We think that the cancellation of the contract, as adjudged by the trial court, on the facts alleged and proved can be sustained only by reason of the abandonment of the contract by defendant in error. * * *

"The contract specifies as the sole cause of forfeiture of this right a failure to drill the first well within the time or to the depth there specified, and the difficult question in this case is whether in the face of this express stipulation of the cause of forfeiture we should imply another based on the breach of an obligation not itself expressed in the contract. * * *

"It is a recognized rule that additions ought not to be made to contracts by implication beyond that which is necessary. And we see no reason to doubt that full protection may be accorded the owner with respect to the enforcement of the implied covenant of the lessee to use due diligence in mineral development, without making a breach of the covenant a ground of forfeiture. In the first place, the

party obligated to drill cannot abandon his contract without .subjecting same to cancellation on that ground. * * *

"There can be no doubt that defendant in error's rights under his contract were of such a nature as to be lost by abandonment. * * *

"We have no doubt of the correctness of the judgment of the district court in ordering the cancellation of the contract here involved on the ground of abandonment."

On June 30, 1923, a group of cases was decided by the Supreme. Court; Justice Greenwood, who had written the opinion in the Grubb-McAfee Case, also writing the opinion in each of these cases, each of which is directly pertinent to the question before us. The lease instruments involved in those cases were essentially the same as the one here being considered. Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601, was an action to recover the oil, gas, and other minerals with appurtenant service rights in a certain described tract of land in Brazoria county. It involved the construction of an oil and gas lease upon the usual form and upon the usual royalties. Judge Greenwood said:

"The right of recovery by defendants in error is predicated on the view, adopted by a majority of the Court of Civil Appeals, that Underwood and his assigns acquired an absolute fee-simple title to nine-tenths the oil, gas, and other minerals in place, upon condition subsequent that specified operations for drilling a well be performed, and that, after compliance with such condition subsequent, neither Arnold and wife nor their assigns, could be reinvested with title to the oil, gas, and other minerals, without a written conveyance, in the absence of limitation or estoppel.

"Careful consideration leads us to disapprove the conclusion of the Court of Civil Appeals as to the legal effect of the grant to Underwood. The grant was of minerals in place with appurtenant rights. The vital consideration for the grant was royalties on mineral production. Arnold and wife could have made a deed of gift to their mineral estate. They could have conveyed the minerals for a nominal or formal consideration. Instead, they were careful to have the writing provide, in addition to the consideration of $1, a consideration of possibly large value, realizable only through exploration and production. The grant was plainly for the purpose of securing a test of the land, which, if successful, was to result in the mining and marketing of valuable minerals, for the joint profit of grantors and grantee, their heirs or assigns. Testing was merely preliminary to production, which was the real aim and end of all parties. As if to remove doubt as to the true purpose of the grant, it was expressly declared, first, that it was the intent of all parties that the grant should operate as a conveyance for the purpose mentioned; and, second, that the parties understood such- intent. * * .*

"The grant was not of an absolute fee. The estate conveyed, on condition subsequent, was a determinable fee, inasmuch as the land might always produce minerals in paying quantities, causing the grant to endure forever,. and in-

asmuch as the intent is unquestionable that the land was to be used for no other purpose than to drill for, and produce the minerals, and that the grant was to be enjoyed only while the work of mineral exploration and production was carried on."

In the course of the opinion, Justice Greenwood, remarking on the case of Grubb-McAfee, said:

"This court declined to hold that the implied obligation to- continue the exploration for, and production of, minerals, under a lease similar to that to Underwood, was a condition subsequent, for breach of which the lease might be forfeited. We see no necessity for changing the view on that point expressed in Grubb v. McAfee. However, there are .expressions in that opinion as to the nature of the lessee's title and as to the plaintiff's suit being maintainable only on proof of abandonment, which are not consistent with our conclusions in this case and in the case of Stephens County v. Mid-Kansas Oil & Gas Company, supra. Much the same practical results are obtained whether the mineral estate conveyed is regarded as determinable or is regarded as held on condition subsequent, where there has been a failure of the lessee to perform the obligations, express or implied, which are essential to the accomplishment of the purpose of the grant. Our object is to announce a rule which is truly consonant with the real intent of the contracting parties."

In Thomason v. Ham, 113 Tex. 239, 254 S. W. 316, there is this:

"The grants are of minerals in place but for the single purpose 'of drilling, mining, and operating for minerals.' Each grant, for the purposes stated, is to endure for 20 years from the discovery of minerals and as much longer as the same can be produced in paying quantities. Moreover, each grant appears to expressly authorize the exercise of the right to abandon the enterprise by providing that 'the second parties, their heirs and assigns may at any time hereafter surrender up this grant and be relieved from any part of the contract heretofore entered into that may at that time remain unfulfilled, then and from thereafter this grant shall be null and void and no longer binding on either party.' Such grants plainly cannot endure after their- voluntary relinquishment by abandonment. Regardless of this express surrender clause, we held to-day that estates vesting under grants for the sole purpose of mineral development, made in view of promised royalties, were limited to the time the grantees and their assigns were pursuing the essential purposes and objects of the grant, and that abandonment of such contracts and of the mineral operations thereby required necessarily deprived the grantees therein and their assigns of any further claim, to minerals or land. The principle is applicable and controlling in preventing Thomason or his assigns from having any title in or to the minerals or land in controversy, after abandonment of the mining operations."

Again, in Robinson v. Jacobs,·113 Tex. 231, 254 S. W. 309, Judge Greenwood said:

"Thompson granted nothing save for purposes of mineral exploration and production. He was careful to insert a stipulation in the writing he signed to the effect that such was the understanding of both parties. There was a possibility of endless mineral production, with profit, so that the grant might continue forever. The intent is as plain from all the terms of the instrument as if it had been expressly declared that the land was to be used for no other purpose than for mineral exploration, development and production, and that on termination of such use nothing should be held or owned under the grant. Hence the grant passed no absolute fee. It created a determinable fee, leaving a possibility of reverter to the grantor or his assigns. Abandonment of the enterprise, which it was the sole object and purpose of the grant to accomplish, would necessarily end the estate created by the grant. * * *

"The pleadings and evidence raise the issue of termination of plaintiffs in error's title and rights, through cessation of use for the purpose of the grant, whether or not defendant in error should prevail on the issue of abandonment."

So in Munsey v. Marnet, etc., Co., 113 Tex. 212, 254 S. W. 311:

"The wells expressly mentioned in both leases were sunk by the respective lessees within the times stipulated and produced oil in paying quantities.

"In 1913 this suit was instituted by plaintiffs in error to cancel the instruments above set out, on the ground that the grantees and their assigns, including defendant in error, had abandoned their contracts and refused to perform their obligations to the grantors and their assigns, and had abandoned all operations for minerals. * * *

"In our opinion, both contracts or grants passed title to corporeal property, not absolutely, but for mining purposes only, and title of such nature as to be incapable of enduring after abandonment of the contracts or abandonment of operations for mineral discovery and production. * * *

"Viewing the two instruments from beginning to end, whatever estate or right was acquired under either of them terminated with the mining operations contracted for. * * *

"Expressions may be found in the opinions of this court treating implied mining obligations in oil leases as conditions subsequent, such as Benavides v. Hunt, 79 Tex. 394, 15 S. W. 396. And the court denied a writ of error in J. M. Guffey Petroleum Co. v. Oliver (Tex. Civ. App.) 79 S. W. 884, where similar expressions were used. To the same effect are portions of the opinion in Fisher v. Crescent Oil Co., supra, approved on the first appeal, in this case. 199 S. W. 687. But we find nothing from this court to give support to the theory that one can repudiate his drilling obligations and still hold the estate which is granted for the sole purpose of securing performance of such obligations. The doctrine seems to have scant support in the American decisions.

"Our discussion of the questions presented, in the above-cited cases of Stephens County v. Mid-Kansas Oil & Gas Co., Texas Co. v. Davis and Robinson v. Jacobs makes it unnecessary to extend this opinion."

So that, from a consideration of the very full discussion of the principles involved in this group of cases by the Supreme Court, and of all that is said in all of the cases cited, we think the conclusion is inescapable that in a contract such as we have before us the essential purposes of the lease are for reasonable development, and producing and marketing of the minerals in contemplation, and that there is necessarily implied a covenant by the lessee for reasonable diligence in thus developing the lands for oil. There can be no doubt that this interpretation of the contract is most truly consistent with the real intention of the contracting parties, and this is the supreme test of meaning as laid down by the learned associate justice in the above cases. The reasoning which is unanswerable is that the nature of the grant is not an absolute fee, but a determinable fee, which fee is ended when the lessee ceases to exercise diligence in the development of the land for minerals according to the terms of the lease. This is not, perhaps strictly speaking, a condition subsequent, as a contract to drill within a definite time or the like, but rather it is a limitation affecting the extent of the estate granted. But whether such duty of development be technically a condition subsequent or be essential to a determinable estate is of little practical importance, since, as pointed out in the Texas Co. v. Davis Case, supra, the same practical results are obtained in each case.

It cannot be denied that the undisputed facts in the Grubb-McAfee Case showing a complete abandonment of the contract and all operations justified and even required the decree of cancellation under any view of the law, but the possible limitations suggested in that case that such a suit for cancellation was maintainable only on such proof of abandonment has been specially corrected in the opinion by Justice Greenwood in Texas Co. v. Davis, supra. It must be borne in mind that by the term "abandonment" in this connection is not meant the relinquishment of title to real estate once fully vested. This would be an inaccurate use of the term. A vested title to real estate can only pass by deed, judgment, or other means recognized by law. Abandonment, as such, of title is not recognized in this state. What is meant is most fully explained in the group of cases we have been discussing. Abandonment in that connection pertains to the enterprise or business, upon the existence of which the continuance of title depends. There it is an incident determining title, but not an act passing title. It is like an event terminating an estate. This inheres in the nature of the ordinary oil lease contract, which is in very truth a species of joint enterprise between the owner and lessee. No other interpretation so fairly represents the real intention of the parties as that of determinable fee

terminating upon breach of any material condition, express or implied, essential to the purposes of the contract.

The reasoning of the Supreme Court in the group of cases just discussed leaves no doubt; that that court recognizes a substantial distinction between a title upon condition subsequent and a determinable fee ending upon an event; that, where the essential purpose of the grant is the development of the lease and the production of oil, the grant is of a determinable fee ending with the cessation of such reasonable development and production; that this determination of the estate is not upon any principle of abandonment of title acquired. These cases abound with well-considered expressions which show unmistakably that a cessation of development, that is, a failure reasonably to prosecute such essential purpose of the contract with diligence, will terminate the title entirely, aside from any intentional abandonment of the contract in its entirety. Of course, such abandonment would terminate the lease, as in the Grubb-McAfee Case, but the estate may, and will, terminate short of such complete abandonment of all rights under the contract. The lessee might, as here, lack diligence in the prosecution of the proper development of the lease, yet steadfastly refuse to abandon benefits already received and then being enjoyed. But he must be held to a weighing of these benefits in determining whether he will cease further developments of his lease. The bonus and rentals paid in this case are large in the aggregate, but, when it is remembered the transaction is large—85,000 acres having passed—the amounts are relatively small. The real consideration and the essential purpose of the contract being a reasonable development of the property for oil, a failure in which respect will terminate the estate, it necessarily follows that such failure may occur short of abandonment of the lease, as the term "abandonment" is technically understood.

We add this further word in emphasis of the controlling feature of these cases, as is perfectly apparent from a consideration of the opinions reviewed: The action to cancel, so called, is not in reality the equitable action to forfeit for breach of covenant, either as to condition precedent or subsequent, and therefore to divest title for cause. It is in truth a proceeding to recover the land unaffected by the lease which has expired by its terms as interpreted. The case is maintained on the theory, not that the lease should be forfeited for cause, but that there is no further title—it has ended.

[2] What we have said disposes of the case, yet there is presented in the petition for writ of error a question of practice of such importance that we deem it proper to decide it.

The Court of Civil Appeals held that there was no evidence to support the decree of specific performance rendered by the trial judge, and, there being no assignment of error raising this question, that the same was fundamental error, for which it reversed the judgment of the district court. This we think was error in the Court of Civil Appeals. The right of the Court of Civil Appeals to reverse the judgment of a district court depends upon an error being assigned in the manner prescribed by law or the existence of an error apparent upon the face of the record, commonly referred to as fundamental error. Robertson v. Hughes (Tex. Com. App.) 231 S. W. 735. Unless error appears in one of these ways, that court has no power to reverse. An error which requires the Court of Civil Appeals to search the statement of facts is not that fundamental error which the court is required to examine. Ford & Damon v. Flewellen (Tex. Com. App.) 276 S. W. 903. If a Court of Civil Appeals is not required to search the record in support of such a pretended error, it is because the same is not fundamental, and, of course, if it is not fundamental, the court has no right to consider it, however willing it may be to do so.

Upon a consideration of the cases above discussed, we recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that judgment be here rendered in favor of plaintiff in error canceling the lease in controversy, save and except ten acres, including the two producing wells of defendant in error, more particularly described and set out below. This reservation is recommended because of the express tender of plaintiff in error in the trial court, in recognition of possible equities of defendant in error in the two producing wells brought in on the lease.

For the reasons suggested in the accompanying opinion we recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that judgment be here rendered in favor of plaintiff in error canceling the lease in controversy, save and except as to 10 acres described as follows, to wit: A tract or parcel of land in rectangular form of 1,000 feet in length east and west, and 425 feet in width north and south, the boundary lines of which tract shall be respectively parallel to the boundary lines respectively of the survey in which said land is the central point. The center of the said rectangle is the center of the straight line drawn from the Sigler wells Nos. 1 and 3, said wells being located on and part of section 51, block No. 2, Houston & Texas Central Railroad Co. surveys in Wilbarger county, Tex., upon which said 10 acres is located said oil wells Nos. 1 and 3.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals re-

versed, and judgment rendered for plaintiff in error for cancellation of lease, save as to 10 acres, as recommended by the Commission of Appeals.