## McGINLEY CORPORATION v. LIDO OIL CO. et al. [*]
### No. 6898.

Circuit Court of Appeals, Fifth Circuit.
June 5, 1934.

[*]Rehearing denied July 14, 1934.

T. R. Boone, of Wichita Falls, Tex., and O. T. Warlick, of Vernon, Tex., for appellant.

John B. King and Leslie Humphrey, both of Wichita Falls, Tex., and Allen S. Wrenn, of Brooklyn, N. Y., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Appellant filed a bill in equity to establish title in itself to a fourth interest in an oil and gas lease as to 1,329 out of a total of 3,000 acres covered by the lease. The bill was based on a written contract, but in the alternative prayed for reformation of that contract on the ground of mutual mistake. This appeal is taken from a decree of dismissal on final hearing.

The contract upon which the rights of the parties depend was executed on May 11, 1927, by Lloyd Sigler, William H. Reynolds, and the Sigler Oil Company. At that time Sigler owned one-fourth and Reynolds three-fourths of the company's capital stock. The contract recites that there was then pending a suit brought by Sigler against Reynolds, and that they had agreed upon a compromise settlement "of all matters in controversy between the said parties hereto." It then provides for the surrender by Sigler of all claims against Reynolds and of all the stock which he held in the company in consideration of the assignment and transfer to Sigler by

Reynolds or the company of a one-eighth overriding royalty in oil produced from 10 acres on which there was a producing well; of a one-fourth interest in a contract held by another oil company covering 597.31 acres, and of one-fourth of the "remaining acreage" to be selected and separately conveyed. The acreage so dealt with, in addition to 40 acres that had been previously disposed of, aggregated 1,671 acres, thus leaving 1,329 acres of the 3,000-acre tract in which apparently Sigler was to have no further interest, his interest therein having passed out of him by virtue of his surrender of his stock in the company. The assignments and transfers to Sigler were made subject to a suit brought in 1924 by the Waggoner estate against the Sigler Company, then pending in the Supreme Court of Texas. The Waggoner estate was the owner of the leased land. The lease was for five years from its date in 1919, and as long thereafter as oil or gas should be produced from the land, but it provided that each producing well should hold a square of 2,000 acres with the well in the center without further payment of rent. A producing well was drilled within five years from the date of the lease, but its location was such that it did not form the center of a square of 2,000 acres on the leased land; only the 1,671 acres above referred to were so situated as to become rent free. The purpose of the suit by the Waggoner estate was to cancel the lease on the entire tract except 10 acres allowed for the producing well, including with this exception the 1,671 acres within the square as well as the remaining 1,329 acres outside upon which rent had not been paid after the producing well came in. In 1926 the Supreme Court of Texas upheld the right of cancellation as so asserted, Waggoner Estate v. Sigler Oil Co., 284 S. W. 921; but had granted a petition for rehearing before the compromise settlement here involved was made. After that settlement, and in June, 1929, the Supreme Court of Texas, finally held that the lease had not become forfeit, either as to the 1,671 inside acreage, or as to the 1,329 outside acreage. 118 Tex. 509, 19 S.W.(2d) 27. In the fall of 1929, oil was discovered on the 1,329 outside acreage, and in October of that year Sigler assigned any interest he might have to that part of the lease to appellant; and the Sigler Oil Company was succeeded by the Lido Oil Company. Throughout the litigation in the state courts of Texas, the Sigler Oil Company, or its successor, the Lido Oil Company, asserted title to the entire 3,000 acres covered by the lease. But Sigler himself testified that he was advised by his attorney and believed that the lease as to the 1,329 acres here in dispute had terminated because of the nonpayment of rent and failure of development. He did not claim that at the time he made his contract with Reynolds and the Sigler Company he understood or thought he was retaining an interest in the outside 1,329 acres. On the contrary, he admitted that it was his intention to part with his whole interest therein.

It is plain enough from the terms of the contract that Sigler was to have an interest only in parts of the inside 1,671 acres. "The remaining acres, * * * consisting of 1,023.31 acres," could not have referred to the whole tract, because they were exactly the number of acres that would be left of the 1,671 acres after taking into account the 10 acres that went with the well and the 637 acres as to which assignment had been previously executed by the Sigler Oil Company.

■■ There is no evidence whatever to support the contention that a mutual mistake was made in failing to include in the assignment from Reynolds and the Sigler Company to Sigler a fourth interest in the outside 1,329 acres. There was not even a one-sided mistake. Sigler got precisely what he testified it was agreed that he should have. He thought the 1,329 outside acres had been lost for failure to comply with the terms of the lease, as he freely admitted. It was not until after the discovery of oil on the outside acreage that the possibility occurred to anybody of having the contract so construed or reformed as to sustain the claim now asserted. The most that can be said is that Sigler, if he had known that the courts would ultimately hold that the company had not lost the outside acreage, would have insisted upon having an interest in it. There was no mistake as to any fact in existence when the settlement was made. Mistake as to what courts may hold in the future on a pending appeal furnishes no ground for setting aside or reforming a contract which at the time it was entered into correctly expressed the intention of the parties to it. Chicago, etc., Ry. Co. v. Wilcox (C. C. A.) 116 F. 913. This was a contract for an exchange of stock for property and not an agreement of partition between joint owners. As Sigler owned no interest in the land and the corporation owned no interest in the stock, the principles of law governing the partition of jointly owned property do not apply.

The decree is affirmed.